Irene C. PARODI, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD and Office of Personnel Management, Respondents.

No. 80–7671.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 10, 1982.

Submitted April 13, 1982.

Decided Oct. 21, 1982.

As Amended March 29, 1983.

Paul M. Dubrasich, Browne & Kahn, San Francisco, Cal., for petitioner.

William Kanter, argued, Russell L. Caplan, William Kanter, Washington, D.C., on brief, for respondents.

Before CHOY, PREGERSON, and POOLE, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Irene C. Parodi, a federal employee, was transferred to an office in which many other employees smoked. She began experiencing pulmonary difficulties. On her doctor's advice, she took a leave of absence from work. She then applied for employment disability benefits, claiming her reaction to cigarette smoke rendered her disabled. Doctors who examined her on behalf of the government found that she had not suffered physical damage. They did conclude, however, that her hypersensitivity to cigarette smoke prevented her from working in a smoke-filled environment. Appellee Office of Personnel Management (OPM) ruled that her medical condition did not render Parodi disabled within the meaning of the governing statute and denied disability benefits. Appellee Merit Systems Protection Board (MSPB) affirmed the denial.

Parodi appeals, claiming that appellees, in denying her disability benefits, misconstrued the statutory meaning of "disability." Appellees answer that this court has no jurisdiction to review this case, or, if this court has jurisdiction, that Parodi was not disabled under the applicable statute.

We conclude that this court has appellate jurisdiction to review appellees' decision and that Parodi was disabled. Accordingly, we reverse and remand for further proceedings.

BACKGROUND

Parodi worked for the Defense Logistics Agency for nearly twelve years. In July

1977, the agency transferred her to a new workplace, located in a room occupied by sixty to seventy people, many of whom smoked.

Immediately after the transfer, Parodi began missing work due to pulmonary complications which included continual phlegm production, chest pains, congestion, and difficulty breathing and speaking. A pulmonary specialist, Dr. Donald Ho, diagnosed her as suffering from "asthmatic bronchitis with hyper-irritable airways," and concluded her condition stemmed from her reaction to cigarette smoke. Dr. Ho recommended she take leave from work. She did so and her symptoms subsided. Dr. Ho then recommended she not return to work in a smoke-filled environment. Parodi continued her absence from work and, shortly thereafter, on June 26, 1979, she filed for disability retirement benefits.

Two doctors examined Parodi on behalf of the OPM. Dr. Charles Bass did not perform any objective tests but reported that Parodi did not suffer any short or long term adverse physical effects. Dr. Bass acknowledged that his opinion could change if he saw Parodi's chest x-rays and that Parodi's problem could require "personnel and environmental control." Dr. Robert Fallat, in examining Parodi, exposed her to cigarette smoke and within four minutes she suffered acute pulmonary problems including airway irritation, an increase in airway resistance, and a reduction in peak-flow rates. Dr. Fallat concluded that Parodi was hypersensitive to cigarette smoke, and recommended she "not return to employment in the same office where she previously experienced significant symptomatology." Dr. Fallat also stated that requiring Parodi to work in her previous job would endanger her health.

The OPM reviewed the medical evidence and, on September 27, 1979, concluded that Parodi was not totally disabled "within the meaning and intent of the Civil Service Retirement Regulations." Parodi appealed to the MSPB.

In its decision, the MSPB acknowledged the doctors' recommendation that Parodi not return to work in a smoke-filled environment and that her superior officer believed that she could not do her job due to pulmonary problems. The MSPB also recognized that Parodi "might reasonably be concerned with the probable risk to her future health from working in an environment where exposure to cigarette smoke presents a hazard to all employees, and particularly to herself because of her peculiar physical sensitivity." Despite these findings, the MSPB concluded that Parodi was not totally disabled and affirmed the OPM decision.

## JURISDICTION

Parodi requests that this court review the MSPB's denial of her disability retirement claim. Our review of this denial is governed by several statutes. At the time Parodi filed her claim, the employee retirement statute provided that "[a]n administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter [5 U.S.C. §§ 8331 et seq.] may be appealed to the Merit Systems Protection Board." 5 U.S.C. § 8347(d). Another statute provided that persons could appeal decisions of the MSPB to the United States Court of Claims or the United States Court of Appeals. 5 U.S.C. §§ 7703(a)(1) and (b)(1). Under section 7703, courts must set aside agency actions found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The retirement statute, 5 U.S.C. §§ 8331–48, also provided, however, that "[t]he Office [of Personnel Management] shall determine questions of disability and dependency arising under this subchapter. The decisions of the Office concerning these matters are final and conclusive and not subject to review." 5 U.S.C. § 8347(c).[1]

---

1. Congress amended section 8347(c) in 1980 to provide for judicial review under 5 U.S.C.

§ 7703(c) in involuntary disability retirement cases where the employee was found disabled

The question before us is whether this court may review the MSPB's denial of Parodi's claim, and if so, what standard of review should be applied. Parodi argues that this court should review the MSPB decision pursuant to the standard of review set forth in section 7703(c). Appellees contend that section 8347(c), in mandating that OPM decisions concerning disability and dependency "are final and conclusive and not subject to review," bars any judicial review of Parodi's claim.

With one exception, discussed below, courts have rejected both these positions. Courts have recognized that the "conventional 'substantial evidence'" standard of review—which Parodi seeks to apply—does not apply to disability determinations because section 8347(c) places a "special and unusual restriction on judicial examination," *Scroggins v. United States*, 397 F.2d 295, 297, 298 (Ct.Cl.), *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).[2]

Courts, have also rejected the contention that section 8347(c) bars all judicial review of OPM disability determinations. That section specifically limits its effect to questions of "disability and dependency." Thus, courts have interpreted section 8347(c) as barring judicial review only of the evidentiary basis of determinations concerning disability and dependency. *See Scroggins*, 397 F.2d at 298, 299. Courts, however, have allowed judicial review in disability cases "where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" *Scroggins*, 397 F.2d at 297, *quoting Gaines*

*v. United States*, 158 Ct.Cl. 497, 502, *cert. denied*, 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). *See also Polos v. United States*, 621 F.2d 385, 391 n. 9 (Ct.Cl.1980); *Fancher v. United States*, 588 F.2d 803, 806 (Ct.Cl. 1978); *Allen v. United States*, 571 F.2d 14, 17 (Ct.Cl.1978); *McFarland v. United States*, 517 F.2d 938, 942–43 (Ct.Cl.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *McGlasson v. United States*, 397 F.2d 303, 307 (Ct.Cl.1968); *Smith v. Dulles*, 236 F.2d 739, 742 (D.C.Cir.), *cert. denied*, 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244 (1956); *Matricciana v. Hampton*, 416 F.Supp. 288, 289 (D.Md.1976); *Cantrell v. United States*, 240 F.Supp. 851, 853 (W.D.S.C.1965), *aff'd*, 356 F.2d 915 (4th Cir.1966).[3]

Thus, under this so-called *Scroggins* rule, courts treat section 8347(c) as limiting, rather than barring, judicial review otherwise provided by section 7703(c). While the *Scroggins* standard of judicial review and the standard of review provided by section 7703(c) are similar—both allow courts to overturn decisions based upon improper procedures or misconstruction of the law— the *Scroggins* standard of review is narrower. Courts reviewing agency decisions under section 7703(c) overturn decisions not supported by substantial evidence whereas, courts reviewing decisions controlled by section 8347(c), as construed by *Scroggins*, may not reexamine the evidentiary basis for an agency's disability determination.

This construction of section 8347(c), which limits rather than bars judicial review, is consistent with the presumption favoring judicial review of agency actions. "Only upon a showing of 'clear and convinc-

---

on the basis of his or her mental condition. Pub.L. No. 96–500, 94 Stat. 2696 (1980), (codified at 5 U.S.C. § 8347(d) (1981)). As the statute went into effect January 1, 1981 and Parodi's claim did not involve an involuntary claim on the basis of her mental condition, the amendment does not control her case. The significance of the amendment is discussed *infra*.

**2.** The statute was amended since *Scroggins*. The change—substituting the OPM for the Civil Service Commission in subsection 8347(c) and the MSPB for the Civil Service Commission in

subsection 8347(d)—was a technical amendment and does not affect the *Scroggins* doctrine. *See Chavez v. Office of Personnel Management*, MSPB No. DA 831609003 (May 28, 1981), slip op. at 10.

**3.** Congress did not explain the purpose of section 8347(c). *See Matricciana v. Hampton*, 416 F.Supp. 288, 289 n. 1 (D.Md.1976). (After an exhaustive search, counsel was unable to come up with an explanation of the purpose of section 8347(c) in the legislative history.)

ing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), cited in *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975). The language of section 8347(c) does not provide clear and convincing evidence of a congressional intent to bar all judicial review of disability determinations. The statute only evinces a congressional intent to bar judicial review of factual questions concerning disability and dependency.[4]

The Eighth Circuit recently became the first court to reject the Court of Claims' *Scroggins* rule by holding that courts lack jurisdiction to review voluntary—i.e., employee-initiated—disability retirement decisions. *Morgan v. Office of Personnel Management*, 675 F.2d 196 (8th Cir.1982). The *Morgan* court asserted that the 1980 amendment to the disability statute, Pub.L. No. 96–500, 94 Stat. 2696 (December 1980), indicates that Congress recognized that section 8347(c) mandates a total bar on judicial review of voluntary disability decisions. The 1980 amendment, however, made involuntary—i.e., agency-initiated—disability retirement determinations based on an employee's mental condition subject to judicial review pursuant to the provisions of 5 U.S.C. § 7703, rather than the narrower provisions of section 8347(c).

According to *Morgan:*

this amendment expressly providing for judicial review under § 7703 would have been redundant if § 8347(c) had already provided for judicial review under § 7703. The 1980 amendments are specific. Had Congress intended to provide for judicial review of *all* disability determinations and not just agency-initiated involuntary disability retirement determinations based in whole or in part upon

mental condition, Congress could have so provided.

*Morgan,* 675 F.2d at 200 (emphasis original).

We disagree with the *Morgan* analysis. The argument that the 1980 amendment would have been redundant if section 8347(c) had provided for judicial review under section 7703 is irrelevant for the simple reason that section 8347(c), as construed by *Scroggins,* does not provide for review under section 7703. Rather, as noted above, *Scroggins* teaches that section 8347(c) limits the review provided by section 7703(c). The 1980 amendment gave courts power to review the facts underlying an MSPB decision involving an involuntary disability determination based on mental condition—a power courts do not possess, under *Scroggins,* when reviewing a MSPB decision involving a voluntary disability application. Thus, there is no conflict or redundancy between *Scroggins'* interpretation of section 8347(c) and the 1980 amendment. The amendment, rather than duplicating *Scroggins,* expands judicial review beyond that provided for by *Scroggins* for involuntary disability retirement determinations based on mental condition.

The *Morgan* court also misread the legislative reports accompanying the 1980 amendment. *Morgan* contends that the reports refer to a bar on *all* judicial review. The House Report, however, in discussing the problem Congress intended the amendment to remedy, pointed to three cases that did not allow "judicial review" to show that the amendment was necessary. H.Rep. No. 1080, 96th Cong., 2d Sess. 4 (1980). All three cases—*Scroggins v. United States,* 397 F.2d 295 (Ct.Cl.), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 263 (1968), *McGlasson v. United States,* 397 F.2d 303 (Ct.Cl.1968), and *McFarland v. United States,* 517 F.2d 938 (Ct.Cl.1975)—held that under section 8347(c), courts could not review the factual findings that underlie an

---

**4.** Had Congress wished to preclude judicial review of both factual and legal questions, Congress could have so provided. *See* 38 U.S.C. § 211(a) as it read prior to its 1970 amendment. ("[D]ecisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision.")

agency's disability and dependency determinations, but that limited judicial review, i.e., review under the *Scroggins* rule, is appropriate. Thus, the bar on judicial review referred to by the reports precludes only judicial review of factual findings.

The legislative history of the 1980 amendment also indicates that Congress amended the statute based, in part, on the OPM's representation that section 8347(c) already allowed limited judicial review of all disability proceedings. As *Morgan* notes, Congress passed the 1980 amendment to prevent involuntary disability retirement proceedings from being misused to force employees out of active service for reasons of mental competency. *Morgan,* 675 F.2d at 200. *See also* S.Rep. No. 1004, 96th Cong., 2d Sess. 2, *reprinted in* 1980. Code Cong. & Ad.News 5986, 5987. At the time the initial House version of the amendment was passed, the OPM objected that the proposed standard of judicial review—*de novo* review of the evidence—was too broad. *See* letter of Alan K. Campbell, Director, OPM, May 14, 1980, H.R. 96–1080, at 8. The OPM, however, did not argue that judicial review was not otherwise available. In fact, the OPM took a position opposed to that which it now takes before this court by admitting that judicial review exists for all disability retirement decisions and that the *Scroggins* rule was appropriate for reviewing voluntary disability determinations. The Director of the OPM wrote Congress:

We believe it is reasonable and proper to restrict *expanded* judicial review to involuntary disability retirements. An employee who voluntarily applies for disability retirement seeks to establish title to a benefit granted by law; the Office of Personnel Management is the administrative agency charged under the law with the managerial function of adjudicating disability retirement claims. *It is appropriate, therefore, that OPM decisions on voluntary applications be conclusive, reviewable only to determine whether there has been a substantial procedural error, a misconstruction of governing legislation, or some like error going to the heart of the administrative determination.*

H.R. 96–1080 at 8 (emphasis added).[5]

Thus, we disagree with the Eighth Circuit's conclusion that the 1980 amendment indicates that section 8347(c) forecloses all judicial review.[6] ˙ Rather, the history and language of the 1980 amendment indicate Congress merely wished to expand judicial review for involuntary disability retirement determinations based on an employee's mental condition, not that Congress believed the law barred all judicial review of disability determinations.

■ Therefore, we decline to follow the *Morgan* decision and agree with the prior consistent judicial opinions that section 8347(c) does not bar all judicial review.[7]

---

**5.** A similar letter accompanies S.R. 96–1004, but is not reprinted in the Congressional & Administrative News. The letter may be found in the 1980 Senate Reports, on microfilm in the Library of the United States Court of Appeals for the Ninth Circuit.

**6.** "Although we look to the reasoning of other circuits and district courts for guidance, we are bound only by decisions rendered in this circuit." *Gunther v. County of Washington,* 623 F.2d 1303, 1319 (9th Cir.1979), *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

**7.** Appellees also assert that the Supreme Court's decision in *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), precludes judicial review of voluntary disability decisions.

*Erika* addressed the question whether the Court of Claims has jurisdiction to review determinations by private insurance carriers of the amounts of benefits payable under Part B of the Medicare statute. Part A of the Medicare statute covers institutional health care costs such as hospital expenses. Part B provides supplemental benefits for certain medical expenses excluded from the Part A program. The Court held that the Court of Claims has no jurisdiction over Part B determinations.

*Erika* is not applicable to the instant case. While *Erika* dealt with the question of judicial review, the Court did not provide any general guidelines for determining whether a statute precludes judicial review. In fact, the Court specifically noted that judicial review was only foreclosed "[i]n the context of the [Medicare] statute's precisely drawn provisions." *Id.* 102 S.Ct. at 1654. The Medicare provisions are different from the retirement disability provisions at issue in this case. Further, the Court noted that the Medicare statute's legislative history provides clear evidence of Congress'

We adopt the *Scroggins* rule and hold that judicial review of voluntary disability determinations is available where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination.

Here, Parodi claims the agency misconstrued the governing legislation by not finding her "totally disabled" despite her inability to perform her work in her assigned worksite. This case, therefore, falls squarely within the *Scroggins* doctrine and is subject to judicial review.

## DISABILITY

The parties do not dispute the essential facts of this case: Parodi worked in an environment containing cigarette smoke; due to her hypersensitivity to cigarette smoke, she could not work at her assigned worksite; further employment at her worksite would subject her to risk of permanent lung impairment; but she could work in an environment containing less cigarette smoke. Given these facts, the issue here is whether the OPM and MSPB erred in finding that Parodi was not "totally disabled."

Under the governing legislation a person is totally disabled if unable to perform "useful and efficient service in the grade or class of position last occupied by the employee or Member because of disease or injury not due to vicious habits, intemperance, or willful misconduct on his part within five years before becoming so disabled." 5 U.S.C. § 8331(6).[8] Under this statute, the party seeking to prove disability meets its initial burden of proof by showing that the employee is unable, due to disease or injury, to perform useful and efficient service in the specific position occupied at the time proceedings for voluntary or involuntary retirement are instituted by either the employee or the government. *See Cerrano v. Fleishman,* 339 F.2d 929, 931 (2nd Cir.1964), *cert. denied,* 382 U.S. 855, 86 S.Ct. 106, 15 L.Ed.2d 93 (1965).

Appellees do not dispute that Parodi, because of her disease,[9] is unable to perform the specific position she last occupied. Rather, appellees contend that Parodi is not disabled because she does not suffer any permanent or serious impairment, and because she would be able to work in an area with less cigarette smoke.[10]

Both contentions suffer the same flaw—they impose on claimants seeking disability benefits certain requirements beyond those imposed by section 8331(6). As to appellees' first contention, section 8331(6) does not require that a person have a serious or permanent physical problem to qualify for disability benefits.[11] The law only

---

intent to limit judicial review of Part B decisions. *Id.* 102 S.Ct. at 1654–55. Appellees cannot point to any similar history for section 8347(c).

**8.** This definition was replaced in 1980. Act of Dec. 5, 1980, Pub.L. No. 96–499, Title IV, § 403(b), 94 Stat. 2606. The new definition of disability provides in part:

Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service.

*Id.* § 403(a) (codified at 5 U.S.C. § 8337(a) (1981)). The new definition of "disabled" is not applicable to the present case because the amendments were not effective until 90 days after the effective date of the act, December 5, 1980. *Id.* § 403(c).

**9.** Parodi's disease is asthmatic bronchitis with hyper-irritable airways disease. Appellees do not assert her disease was caused by vicious habits, intemperance, or willful misconduct.

**10.** Parodi contends she would be unable to work in a location containing *any* cigarette smoke. The question whether she could work in a location containing less cigarette smoke or whether she requires total isolation from cigarette smoke is not relevant here as the government did not offer Parodi employment in any location containing less smoke than her previous place of employment.

**11.** Section 8331(6) makes no reference to "severity" or "seriousness" of the injury or disease. Had Congress intended "seriousness" to be a prerequisite to recovering bene-

requires the person be unable to perform useful and efficient service, because of a disease or injury, in the job last occupied.

■ Appellees' second contention—that Parodi is physically able to perform her job—is also irrelevant. Section 8331(6) does not require an applicant to prove an inability to perform useful service under all circumstances. While Parodi could perform her previously assigned job in an area with less smoke, as stated above, all she must show under section 8331(6) is an inability, due to an injury or disease, to perform the job she occupied at the time she applied for disability benefits. *Cerrano,* 339 F.2d at 931. She has done so.[12]

While Parodi's condition presents a prima facie case for disability benefits, we recognize that her claim is unusual. Most disability claims involve a physical or mental limitation that prevents a claimant from performing his or her job. Parodi has an environmental limitation. Unlike a person with a physical limitation, a person with an environmental limitation can physically per-

form the assigned work in a proper environment. Here, Parodi could perform the work assigned to her if she were placed in a smoke-free environment. Parodi cannot, however, perform her job due to its location in a smoke-filled office. She is as disabled for her job at her assigned worksite as she would be had she actually suffered permanent and severe chronic bronchitis or another physically disabling disease. She cannot perform her job, not due to choice or bad habits, but due to a disease which limits the environment in which she can work.

Section 8331(6) does not exclude environmental limitations from forming the basis of an employee's disability. Appellees have not cited any authority or justification for precluding victims of environmental limitations from receiving disability benefits.[13] As noted above, to qualify for disability benefits applicants must demonstrate an inability, due to a disease or injury, to perform useful and efficient service at the last job occupied. The nature of the disease or injury, unless it involves vicious habits, in-

fits, it could have explicitly required a showing of seriousness. The federal disability insurance benefits statute, for example, defines disability as:

[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). This definition requires the claimant to prove a serious medical problem before receiving benefits. No such requirement exists under section 8331(6).

Further, disability does not always involve a physical impairment. For example, in *Globe Union, Inc. v. Baker,* 310 A.2d 883 (Del.Super. 1973), *aff'd,* 317 A.2d 26 (Del.1974), the claimants worked in an environment of high lead concentration. When the lead level in their blood reached a certain point, they were transferred to less remunerative jobs in lead-free environments. They applied for and received partial disability benefits. The employer appealed claiming that disability requires physical incapacity as well as loss of wages. The court rejected this argument and affirmed the award. While this case involved the Delaware workers' compensation statute, the principle that a finding of disability does not require a physical impairment applies to this case.

12. Under similar disability statutes, courts have held that one's ability physically to perform a job does not necessarily render the person ineligible to receive disability benefits. For example, in *Diamond M. Drilling Co. v. Marshall,* 577 F.2d 1003 (5th Cir.1978), the claimant suffered a heart attack on the job and filed for benefits under the Longshoreman's Compensation Act. The Benefits Review Board found him totally disabled. The employer appealed. The court, in affirming the award, noted that one can be disabled "when physically capable of performing certain work but otherwise unable to secure that particular kind of work." 577 F.2d at 1006.

13. Analogous areas of law provide that persons suffering from environmental limitations (generally referred to as non-exertional limitations) may be considered disabled. Social Security, for example, provides disability benefits where environmental restrictions result in an "inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work." 20 C.F.R. Subpart P, App. 2, Rule 2000.00(e). *See also Gagnon v. Secretary of Health, Education, and Welfare,* 666 F.2d 662 (1st Cir.1981). Workers' Compensation cases have also recognized environmental limitations as disabling. *See generally* 2 A. Larson, *The Law of Workmen's Compensation,* § 57.61, (1981).

temperance, or willful misconduct, is irrelevant.

In sum, Parodi's lack of a serious or permanent medical incapacity and her ability to perform her job in another location are immaterial to the primary question concerning disability—whether she could perform the job she last occupied. She could not.

The finding that she could not perform the job she last occupied, however, does not conclusively decide this case. Under the facts presented here, Parodi would not be disabled if the government offered her suitable employment—employment at the same grade or position in a location appropriate for Parodi's physical condition—because if such employment were offered, Parodi would be able to perform useful and efficient service. We must decide who carries the burden of proving whether suitable employment is available to Parodi.

The only case discussing this issue is *Cerrano v. Fleishman,* 339 F.2d at 929. There, the Bureau of Customs involuntarily retired Cerrano. The administrative board found Cerrano disabled for "useful and efficient service" in his position. He claimed he was not disabled for service in other positions in the same grade or class. The Second Circuit held that the Civil Service Commission, before involuntarily retiring someone, need not "search the entire galaxy of Civil Service jobs, either in the same grade or the same class, to determine whether or not there was some such position between Alaska and Florida or Hawaii and Maine, which the appellant, in spite of his disability, could fill." *Id.* at 931. The court also suggested that an *employee* applying for voluntary disability benefits would not have to prove "he was unable to perform any of the jobs which for administrative convenience are put in the same grade or class and in which, at the time, there might be an opening." *Id.*

We agree that an employee should not have to prove the availability of an appropriate job. The government is in a better position than the claimant to provide evidence of the availability of suitable employment, particularly the availability of employment in a safe environment. Therefore, we hold that once an applicant for voluntary disability retirement benefits demonstrates an inability to perform useful and efficient service in the last job occupied, the burden shifts to the government to show that an appropriate substitute position is available.[14] If the government satisfies this burden and offers the claimant a suitable position, the claimant is no longer disabled within the meaning of section 8331(6). If, however, the government cannot find a suitable position or refuses to offer one, the claimant is then entitled to disability benefits. In the instant case, Parodi is willing and able to work if a position in the same grade or class located in a safe environment is available. Therefore, unless Parodi's environmental limitation is accommodated within 60 days by an offer of suitable employment in a safe environment,[15] Parodi is eligible for disability benefits. For good cause shown this period may be extended.

The record is not clear whether suitable employment in a safe environment is available. If it is, and if the government does not offer Parodi such employment, she is eligible for disability retirement benefits in an amount to be determined through regular proceedings.

This panel will retain jurisdiction over further proceedings in this appeal if any are necessary subsequent to remand.

---

14. This test is similar to that employed in determining Social Security disability. When applying for Social Security disability, a claimant carries the initial burden of establishing that he is unable to perform his previous work. Once the claimant has made such a showing, the burden shifts to the Secretary of HEW to establish that there is other substantial gainful employment which the claimant can perform. *Hall v. Secretary of HEW,* 602 F.2d 1372, 1375 (9th Cir.1979). The test we adopt is also similar to the test employed in connection with the Longshoremen's Compensation Act. *See Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327 (9th Cir.1980).

15. In this case, the government could simply remove the environmental barriers or offer Parodi a job in an area containing less smoke.

REVERSED and REMANDED for further proceedings in accordance with the foregoing opinion.