**Sherwood T. RODRIGUES, Plaintiff-Appellant,**

v.

**United States Secretary of Labor, Raymond J. DONOVAN, et al., Defendants-Appellees.**

**No. 84–1712.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1984.

Decided Aug. 26, 1985.

Sherwood T. Rodrigues, pro per.

Judith D. Lazenby, Sunnyvale, Cal., for plaintiff-appellant.

Sandra Willis, Asst. U.S. Atty., San Francisco, Cal., for defendants-appellees.

Before WALLACE, KENNEDY and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Rodrigues challenges the termination of his workers' compensation benefits, contending that he has been deprived of due process. The district court dismissed his claim for lack of subject matter jurisdiction, on the basis that Rodrigues had failed to exhaust available administrative remedies. We reverse and remand.

## I. FACTS

From January 1969 to July 1972, Sherwood Rodrigues was employed as a bank examiner with the Federal Home Loan Bank Board. In November 1972, Rodrigues filed a claim with the Office of Workers' Compensation Programs, United States Department of Labor (OWCP). OWCP determined that Rodrigues was totally disabled and awarded compensation for his disability from December 9, 1971.

In the fall of 1977, the Internal Revenue Service (IRS) began investigating Rodrigues for tax evasion. The IRS concluded that Rodrigues had been employed as an accountant and had received earnings from 1971 through 1979. The IRS communicated this to OWCP and also referred the matter to the United States attorney, who brought criminal charges against Rodrigues for failure to file tax returns, 26 U.S.C. § 7203 (1982), and for filing false claims for disability payments with the Department of Labor, 18 U.S.C. §§ 287, 1920 (1982).

On July 19, 1979, before Rodrigues was tried on the criminal charges, OWCP notified Rodrigues by letter that his disability benefits had been suspended. The OWCP letter also asked him to submit a statement detailing his employment and earnings since 1971. Through counsel, Rodrigues responded that he had not worked for anyone since he left government employment and that he had not had any employment earnings. Rodrigues also requested a hearing concerning "why he [had] been disqualified for further benefits."

OWCP responded by letter that Rodrigues had not been disqualified for further benefits, but that they merely were suspended pending resolution of the criminal action. The letter stated, "If Mr. Rodrigues is found not guilty of the charges, appropriate benefits will be reinstated." The letter did not mention Rodrigues's request for a hearing.

In September 1982, the criminal action against Rodrigues was concluded. Rodrigues was convicted after a jury trial on the tax return charges, but the government agreed to dismiss the charges relating to false disability claims in return for Rodrigues's agreement not to appeal his conviction on the other counts. OWCP did not reinstate Rodrigues's benefits, however. Instead, it initiated an investigation of Rodrigues's employment and earnings through the Office of Inspector General (OIG). Rodrigues asserts that from 1979 onward, he made numerous efforts to have his benefits reinstated and repeatedly received reassurances from OWCP personnel that a decision was imminent. But, as of November 1983, sixteen months after the conclusion of the criminal action, OWCP had not issued any formal decision.

Rodrigues's counsel demanded that a final decision be rendered. Finally, on December 27, 1983, based on "additional information" obtained from the OIG investigation,[1] OWCP issued a decision formally rejecting Rodrigues's claim for benefits. The

stated reason for the termination was that Rodrigues was employable and had been employed in the field of public accounting. The decision letter stated that OWCP had reached its conclusions based on "[e]vidence of record," but the letter did not set forth what that evidence was.

OWCP issued a second decision on January 9, 1983, concluding that Rodrigues had been overpaid benefits in the amount of $97,163.76 for the period from 1971 to 1979 because he "failed to report his employment activities correctly."

Rodrigues requested administrative hearings with regard to both OWCP decisions. Then, on February 6, 1984, Rodrigues filed this action in the district court, seeking injunctive relief to compel the Secretary to reinstate benefits from September 1982, until an administrative hearing could be held. The complaint alleged that OWCP's handling of Rodrigues's claim had violated fifth amendment due process.

The district court denied Rodrigues's motion for a preliminary injunction and, on its own motion, dismissed the action for lack of subject matter jurisdiction. Rodrigues timely appealed.

While the case has been on appeal to this court, OWCP has advised Rodrigues that an administrative hearing will be held on his claims.

## II. DISCUSSION

The district court concluded that it lacked subject matter jurisdiction because Rodrigues had not exhausted his administrative remedies. Jurisdiction and exhaustion in this case, however, are separate issues, and the district court should have treated them as such. *See United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir.1983); *SEC v. G.C. George Securities, Inc.*, 637 F.2d 685, 688 & n. 4 (9th Cir.1981); *Montgomery v. Rumsfeld*, 572 F.2d 250, 252–53 (9th Cir.1978). We address these issues separately here.

---

**1.** The record does not show what this additional information was or whether OIG issued a report of its investigation and findings.

*A. Jurisdiction*

Rodrigues's compensation claim arose under the Federal Employees Compensation Act (FECA), 5 U.S.C. §§ 8101–8151 (1982), which provides:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b) (1982). The Secretary contends this provision divested the district court of jurisdiction to hear this action. We disagree.

■ Courts have long indulged in a presumption favoring judicial review of agency action. The Supreme Court has stated that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *accord Lindahl v. Office of Personnel Management*, ——— U.S. ———, 105 S.Ct. 1620, 1627, 84 L.Ed.2d 674 (1985); *Dunlop v. Bachowski*, 421 U.S. 560, 568, 95 S.Ct. 1851, 1858, 44 L.Ed.2d 377 (1975). The "clear and convincing evidence" standard is not talismanic. *See Block v. Community Nutrition Institute*, ——— U.S. ———, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984). The question is one of congressional intent; whether a statute precludes judicial review "is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the action involved." *Id.* at ———, 104 S.Ct. at 2454 (citations omitted), *quoted in Lindahl v. Office of Personnel Management*, 105 S.Ct. at 1627.

Section 8128(b) of FECA precludes judicial review of an action of the Secretary "in allowing or denying a payment." The conduct of the Secretary that Rodrigues challenges in this action is not the "allowing or denying [of] a payment," but rather the manner in which his claim was decided. He contends that he has been denied procedural due process. He does not seek to have his disability claim decided by the district court. He is not arguing in any respect the merits of his underlying compensation claim. Rodrigues's procedural challenge is entirely collateral to his underlying substantive claim for benefits. *See Boettcher v. Secretary of Health & Human Services*, 759 F.2d 719, 721 (9th Cir. 1985); *cf. Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984) (challenge to procedures was "inextricably intertwined" with claim for benefits, therefore claim should not be separated into procedural and substantive elements).

■ The presumption in favor of judicial review is especially strong in cases in which constitutional challenges are raised. "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to courts is essential to the decision of such questions." *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Indeed, if Congress intended to preclude judicial review of the constitutionality of a statutory procedural scheme, that likely would raise a substantial question concerning the constitutionality of the statute itself. *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975). Several cases have refused to read statutory finality provisions to preclude review of constitutional claims. *See, e.g., Johnson v. Robison*, 415 U.S. 361, 373–74, 94 S.Ct. 1160, 1168–69, 39 L.Ed.2d 389 (1974); *Rosen v. Walters*, 719 F.2d 1422, 1423 (9th Cir.1983); *Parodi v. Merit Systems Protection Board*, 702 F.2d 743, 745–49 (9th Cir.1982); *Humana, Inc. v. Califano*, 590 F.2d 1070, 1080–81 (D.C.Cir. 1978); *Trinity Memorial Hospital, Inc. v. Associated Hospital Service, Inc.*, 570 F.2d 660, 665–67 (7th Cir.1977); *Ralpho v. Bell*, 569 F.2d 607, 620–22 (D.C.Cir.1977).

■ The structure of FECA and the language of section 8128(b) convince us that Congress's intent was that the courts not be burdened by a flood of small claims

challenging the merits of compensation decisions, *see, e.g., Soderman v. United States Civil Service Commission,* 313 F.2d 694, 695 (9th Cir.1962) (per curiam), *cert. denied,* 372 U.S. 968, 83 S.Ct. 1089, 10 L.Ed.2d 131 (1963), and that the Secretary should be left free to make the policy choices associated with disability decisions. *Cf. United States v. Erika, Inc.,* 456 U.S. 201, 208–10, 102 S.Ct. 1650, 1654–55, 72 L.Ed.2d 12 (1982) (similar purpose found in Medicare review provisions); *Johnson v. Robison,* 415 U.S. at 370, 94 S.Ct. at 1167 (similar purpose found in finality provision of veterans' benefits statute). We do not read the statute to take the "extraordinary" step of foreclosing jurisdiction over constitutional claims. *See Califano v. Sanders,* 430 U.S. at 109, 97 S.Ct. at 986; *see, e.g., Allen v. Faragasso,* 585 F.Supp. 1114, 1118 n. 3 (N.D.Cal.1984) (court decided challenges to OWCP procedures but refused to consider merits of compensation decision).

■ Although a mere allegation of a constitutional violation would not be sufficient to avoid the effect of a statutory finality provision, *see Reid v. Engen,* 765 F.2d 1457, 1461 (9th Cir.1985), the record before us indicates that Rodrigues may have cognizable due process claims. Rodrigues does not make a facial attack on the constitutionality of the FECA procedures themselves, but, instead, asserts that the procedures are unconstitutional as applied to him. Given the Secretary's failure to provide a hearing after the suspension of benefits, despite Rodrigues's request for one, and the Secretary's considerable delay in deciding Rodrigues's claim, we do not find the due process challenges insubstantial. *See Cleveland Board of Education v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985) ("At some point, a delay in the post-termination hearing would become a constitutional violation." (citation omitted)); *Kelly v. Railroad Retirement Board,* 625 F.2d 486, 490–91 (3d Cir.1980).

We do not mean by this to express any opinion on the ultimate merit of Rodrigues's due process claims. We defer to the district court in the first instance. We simply conclude that, on the basis of the record before us, Rodrigues's due process contentions appear to be more than mere allegations included in the complaint to create jurisdiction where none would exist otherwise.

**B.  Exhaustion of Administrative Remedies**

■ Our cases consistently have held that, unless statutorily mandated, application of the exhaustion doctrine lies in the sound discretion of the district court. *Reid v. Engen,* 765 F.2d at 1462; *United States v. California Care Corp.,* 709 F.2d at 1248; *Southeast Alaska Conservation Council, Inc. v. Watson,* 697 F.2d 1305, 1309 (9th Cir.1983); *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 500 (9th Cir.1980); *Montgomery v. Rumsfeld,* 572 F.2d at 253–54. The judicially-created exhaustion doctrine does not limit jurisdiction; rather, it permits courts to decide whether to exercise jurisdiction. *See United States v. California Care Corp.,* 709 F.2d at 1248; *Stauffer Chemical Co. v. FDA,* 670 F.2d 106, 107 (9th Cir.1982).

■ FECA clearly does not require exhaustion of administrative remedies as a prerequisite to a district court's jurisdiction. As we noted above, FECA *precludes* federal jurisdiction with regard to the merits of a compensation claim. 5 U.S.C. § 8128(b); *see, e.g., Soderman v. United States Civil Service Commission,* 313 F.2d at 695; *see also Reep v. United States,* 557 F.2d 204, 207 (9th Cir.1977) (failure to exhaust FECA remedies barred suit under Federal Tort Claims Act). But we hold today that FECA was not intended to preclude jurisdiction over a due process challenge, such as the one Rodrigues raises here.

■ Just as the nature of Rodrigues's claim in this action avoids the effect of FECA's finality provision, the nature of the claim also makes it somewhat ill-suited for application of the exhaustion doctrine. Ex-

haustion typically is thought of as a precondition to a review of the merits of an agency determination, but, as we must emphasize again, Rodrigues is not seeking review of the merits of the Secretary's decision.

Still, the considerations that inform the exhaustion doctrine are not completely out of place here. Exhaustion of administrative remedies ordinarily is required to

> prevent[ ] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467; *see also Montgomery v. Rumsfeld*, 572 F.2d at 253. Some of these policies are implicated here. In particular, review at this point may be premature and the record as it now stands may be inadequate for judicial review of Rodrigues's due process claim.[2]

First, it is not entirely clear what relief Rodrigues is seeking. The thrust of his complaint seems to be that he wants a hearing concerning the overpayment and termination decisions, and retroactive reinstatement of benefits until such a hearing is held. But the Secretary has now notified Rodrigues that he will have a hearing, and, in fact, that hearing already may have taken place.[3]

If reinstatement of benefits pending a hearing is the only relief that Rodrigues seeks and a hearing has been held, it may be that this case is now moot. On the other hand, if Rodrigues seeks or is entitled to other relief or if he contends that the hearing he was given still does not satisfy due process requirements, it may be that he has now sufficiently exhausted administrative remedies and the case should go forward in the district court.

If the hearing Rodrigues was promised has not taken place, or if it has taken place but no decision has been issued, it may be appropriate for the district court to retain jurisdiction in order to ensure that Rodrigues is given the process he is due.

In sum, then, whether it is prudent to require exhaustion in this case depends on precisely what relief Rodrigues is seeking, where his compensation claim stands in the administrative process, and whether subsequent administrative hearings, if they have occurred, have affected Rodrigues's claims.

Given the vagaries of this case, we are in no position to say whether requiring exhaustion would be wise. In any event, the determination whether to require exhaustion is a matter committed in the first instance to the district court's discretion. The district court, having construed exhaustion as jurisdictional and having dismissed on that basis, has not exercised its discretion.[4] Under these circumstances, the appropriate course is to remand to allow the district court the opportunity to exercise its discretion. *See Stratman v. Watt*, 656 F.2d 1321, 1326 (9th Cir.1981), *cert. dismissed*, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 170 (1982); *SEC v. G.C. George Securities, Inc.*, 637 F.2d at 688 & n. 3; *Montgomery v. Rumsfeld*, 572 F.2d at 254. We do not preclude the possibility that the district court after a review of the facts may find this case moot.

### III. CONCLUSION

We conclude that the district court had jurisdiction over Rodrigues's action. We

---

**2.** Here, we refer to the inadequacy of the record, not in the sense of lack of factual determinations going to the merits of Rodrigues's compensation claim, but rather in the sense of lack of facts as to exactly what process the Secretary has or will afford Rodrigues (the type of hearing, the reasons for delay, etc.).

**3.** It was scheduled for the week of April 22–26, 1985.

**4.** The district court may decide to require exhaustion, or it may decide to exercise its jurisdiction and allow the action to proceed. Alternatively, the court might retain jurisdiction over the case, but stay its own proceedings pending administrative review. *See Montgomery v. Rumsfeld*, 572 F.2d at 254.

remand to the district court to allow it to consider whether to exercise that jurisdiction or to require exhaustion or to fashion such other relief as may be indicated.

REVERSED and REMANDED.