**Linda L. BECKNER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Lynn Martin, as the Secretary of the Department of Labor, Employment Standards Administration, Office of Workers' Compensation Programs, and Lawrence Rogers (OWCP), as Chief of the Employment Branch of the Department of Labor, Defendants.**

**Civ.A. No. 92–K–1262.**

United States District Court, D. Colorado.

Aug. 14, 1992.

Jack Kintzele, Denver, Colo., for plaintiff.

George Gill, Asst. U.S. Atty., Denver, Colo., for defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT, SANCTIONS AND PROTECTIVE ORDER

KANE, Senior District Judge.

Plaintiff Linda L. Beckner, a former employee of the federal government, commenced this mandamus action on June 22, 1992. She moved separately for a temporary restraining order (TRO) and preliminary and permanent injunctive relief. Beckner alleges that she requires immediate medical treatment for a condition known as reflex sympathetic dystrophy (RSD). She claims that the defendants, administrators of the federal workmen's compensation program, refuse to acknowledge that she has this condition and will not authorize appropriate medical treatment for it, specifically the placement of a dorsal column stimulator to alleviate her chronic pain.

At the June 29, 1992 hearing on Beckner's motion for a TRO, I advised Beckner's counsel that I did not have jurisdiction to consider her claim that the defendants erred in denying her benefits. Under the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8128(b)(2), "[t]he action of the Secretary ... in allowing or denying a payment under this subchapter is ... not subject to review by another official of the United States or by a court by mandamus or otherwise." Jurisdiction can only be premised on a constitutional violation or a transgression of a clear statutory mandate. *Staacke v. United States Secretary of Labor*, 841 F.2d 278, 281 (9th Cir.1988). On counsel's request, I granted Beckner a thirty-day continuance to make such a showing.

On July 2, 1992, Beckner moved to reset the TRO hearing, and on July 6, 1992, to amend her complaint. The defendants responded to these motions, alleging that Beckner's claims were moot because the relief requested had already been granted. They also alleged that the delay, if any, in processing Beckner's request for benefits was due to her own actions or those of her counsel. Finally, they requested sanctions under Rule 11 for counsel's failure to adequately investigate the factual and legal basis for Beckner's claims.

In a ruling entered July 14, 1992, I denied Beckner's motion to reset the TRO and granted her motion to amend. Construing the amended complaint liberally, I held that Beckner had at best stated a claim for denial of due process as a result of the defendants' delay in processing her request for benefits. The remainder of her claims went to the merits of the defendants' decision to defer judgment on her claim for RSD, an issue over which I have no jurisdiction. Since the defendants submitted additional information challenging Beckner's allegation that there had been an unconstitutional delay, however, I deemed their response a motion for summary judgment and gave both sides the opportunity to submit additional information. They have done so, and the motion for summary judgment is now ripe. I also consider the defendants' request for sanctions and motion for protective order.

"Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to

judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991); Fed.R.Civ.P. 56(c). The defendants, as the moving parties, have the burden of showing beyond a reasonable doubt that they are entitled to summary judgment. *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991). If they make that showing, the burden then shifts to Beckner to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

■ The undisputed facts show the following sequence of events. Beckner filed for FECA benefits on October 23, 1991, claiming disability for carpal tunnel syndrome, corrective surgery and RSD resulting from that surgery. She supported this claim with various medical reports. On November 7, 1991, the Office of Workers' Compensation Programs (OWCP) determined that none of these records linked Beckner's medical conditions to her federal employment and requested that Beckner provide an additional medical opinion to this effect. This showing is required under the regulations implementing the FECA.[1]

On November 26, 1991, Jack Kintzele, Esq. notified the OWCP of his representation of Beckner on her claim. Beckner also wrote the OWCP on that date, indicating she would have difficulty obtaining the additional opinion because her physician, Dr. Raskin, had been hospitalized. She also enclosed copies of letters sent to her Congressman and Senators requesting their help in speeding her claim. The following day, the OWCP received two letters from counsel in which he enclosed the same medical information originally submitted and a new report of a bone scan. Mr. Kintzele also requested the OWCP speed the processing of Beckner's claim.

The OWCP again determined that none of the documents submitted with this correspondence responded to its request for a medical opinion on the relationship between the conditions of Beckner's federal employment and the onset of her medical problems. Despite this deficiency, the OWCP obtained an independent medical review of Beckner's claim. On December 3, 1991, it forwarded Beckner's records to Harry Boyd, M.D. In a report dated December 13, 1991, Dr. Boyd concluded that Beckner's carpal tunnel syndrome and corrective surgery were related to her federal employment and were compensable, stating "it is my opinion that the diagnosed condition, that is, bilateral carpal tunnel syndrome complicated by reflex sympathetic dystrophy [i]s medically linked to the reported Federal employment." (Resp.Def.Mot.Summ.J., Ex. 7.) He further concluded, however, that the medical reports were "suggestive but not diagnostic of reflex sympathetic dystrophy." (*Id.*) The OWCP received this report on December 24, 1991. Several days later, Beckner submitted a report by Dr. Charles Ripp diagnosing Beckner with stage 2 RSD but not relating this condition to Beckner's employment.

---

1. These regulations place the burden of proof for establishing a compensable disability on the claimant. Thus,

(a) A claimant has the burden of establishing by the weight of reliable, probative and substantial evidence that the claimed condition and the disability, if any, was caused, aggravated, or adversely affected by the claimant's Federal employment. As part of this burden, the claimant must specify the employment incident or the factors or conditions of employment to which the injury, disease or disability is attributed, and must submit rationalized medical opinion evidence, based upon a complete and accurate factual and medical background, showing causal relationship between the claimed condition and Federal employment.

20 C.F.R. § 10.110(a) (1991).

Based on Dr. Boyd's report, on January 8, 1992 the OWCP notified Beckner of its acceptance of her claim for disability based on carpal tunnel syndrome and its decision to "pursue the acceptance of reflex sympathetic dystrophy" pending "further medical development." (Def.Resp.Pl.Mot. Reset TRO Hearing, Ex. 1 at 2). On January 15, 1992, the OWCP arranged for a second medical examination and evaluation of Beckner's claim for RSD by a board certified neurosurgeon, Dr. Irene Willingham. Beckner canceled that appointment, however, notifying the OWCP that she would not be available because she was being sent to the Walter Reed Army Hospital in Washington, D.C., to undergo further RSD treatment, including implantation of a dorsal column stimulator. Beckner agreed to send a full report of her treatment at Walter Reed to the OWCP.

Beckner did not provide the records from Walter Reed until June 25, 1992, after this lawsuit was filed. In the interim, the OWCP received two additional medical reports which conflicted on the diagnosis of RSD, one from Dr. Ripp (noting controversy over the diagnosis but recommending treatment for RSD) and another from Dr. Willingham (finding no RSD or link between Beckner's employment and her chronic pain). On April 14, 1992, the OWCP referred Beckner to an independent specialist, Dr. Jane Delaney, for an examination and referee evaluation. Beckner was forced to postpone that examination for three weeks because she developed pneumonia. In her reports of June 10, 1992 and June 23, 1992, Dr. Jane Delaney found inconclusive evidence of RSD and recommended a psychiatric evaluation.

After she initiated this lawsuit on June 22, 1992, Beckner provided the OWCP with several medical reports supporting the diagnosis of RSD, some of which also advised treatment through the placement of a dorsal column stimulator. Notably, the report of Beckner's treatment at Walter Reed stated that Beckner was a "poor candidate" for placement of the stimulator and that she "is not a candidate for sympathectomy." (Defs.Resp. to Pl.'s Mot. Reset TRO Hearing, Ex. 2 at 1, 2.) On July 1, 1992, the OWCP accepted the claim for RSD, approved the designation of a different treating physician and advised Beckner that it was seeking a second opinion from Dr. Boyd on her request for implantation of a dorsal column stimulator. On July 28, 1992, Dr. Boyd recommended Beckner undergo a psychiatric screening to confirm that placement of the stimulator would be effective. The OWCP has notified Beckner of Dr. Boyd's opinion and has scheduled the psychiatric evaluation.

Based on these facts, the defendants have met their initial burden of demonstrating the absence of a material issue of fact on Beckner's due process claim for unconstitutional delay. The OWCP promptly responded to Beckner's initial claim for benefits, authorizing an award for carpal tunnel syndrome and related surgery in just over two months after its receipt of her claim, even though it found that Beckner failed to provide a medical opinion connecting her disorders with the conditions of her federal employment. In its January 8, 1991 notification letter, the OWCP advised Beckner that it required additional medical information on her claim for RSD and scheduled a medical examination to occur in less than one month. It continued to pursue Beckner's claim even after she canceled that examination and failed to provide, as promised, the medical reports from Walter Reed. (Those reports were unfavorable to her claim that a dorsal column stimulator would be effective.) Finally, the OWCP approved Beckner's request for benefits based on RSD within a few days after it received the records from Walter Reed and other medical evidence from two physicians, despite inconsistent diagnoses and recommendations for treatment.

The OWCP's response time, ranging from a few days to a few weeks, does not approach a denial of due process. *See Littlefield v. Heckler*, 824 F.2d 242, 247 (3d Cir.1987) (citing cases holding delays of ten months to two years in benefits determinations not violative of due process). There is no evidence that the OWCP's requests for additional medical opinions on the diag-

nosis of RSD and propriety of placement of a dorsal column stimulator were based on bad faith, a dilatory motive or lack of even-handedness. *See id.; Wright v. Califano,* 587 F.2d 345, 353 (7th Cir.1978). On their face, Beckner's medical records support the OWCP's contention that the additional evaluations were ordered to resolve inconclusive and conflicting assessments of Beckner's condition. Beckner's claim has never lain fallow. It received consistent attention from the OWCP.

Beckner does not dispute the occurrence of any of these events. In response to the defendants' showing, she simply argues that the defendants' assertion that she "did not submit critical evidence to OWCP's determination until after she filed her complaint" is factually incorrect. (Resp. to Def.'s Mot.Summ.J. at 2.) She then references medical records and other documents, attached to her response, which indicate a diagnosis of RSD before the commencement of her lawsuit. Notably, she does not identify when these documents were actually provided to the OWCP.

Beckner again misses the boat. Beckner's constitutional claim for delay is collateral to any substantive claim of entitlement. The issue is not whether Beckner submitted sufficient evidence to support a diagnosis of RSD before this lawsuit was filed. If it were, this case would be an appeal from the Secretary's decision granting or denying FECA benefits, barred by 5 U.S.C. § 8128(b). *Cf. Marozsan v. United States,* 852 F.2d 1469, 1472 (7th Cir.1988) (action challenging methods used by Administrator, not his decision, not barred by similar jurisdictional limitations of veterans' benefits act); *Arnolds v. Veterans' Admin.,* 507 F.Supp. 128, 130–31 (N.D.Ill. 1991) (distinguishing between a constitutional claim based on delay and one challenging the merits of administrator's decision not to extend duration of benefits under same act). Instead, the issue is whether there has been such a significant delay in the Secretary's processing of Beckner's claim to constitute a deprivation of due process, regardless of whether the Secretary's ultimate determination was right or wrong. Nowhere in her amended complaint or submissions on summary judgment does Beckner directly confront this question. Accordingly, I grant summary judgment in favor of the defendants.

█ The defendants have also moved for the imposition of sanctions against Beckner's counsel under Rule 11. That rule provides:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11. In deciding whether to award sanctions under Rule 11, I must "determine whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Ins. Servs. v. Royal Ins. Co. of Am.,* 935 F.2d 1152, 1155 (10th Cir.1991). "A good faith belief in the argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances." *White v. General Motors Corp., Inc.,* 908 F.2d 675, 680 (10th Cir.1990).

The defendants argue that Beckner's counsel violated this rule by failing to undertake a cursory inquiry into the legal and factual grounds for this lawsuit and by causing delays in the OWCP's resolution of Beckner's claim.

Although counsel's approach in defining this dispute has come perilously close to the "'throw-as-much-mud-against-the-wall-as-you-can-and-hope-some-of-it-sticks'" tactic eschewed in *Dodd Insurance Services*, 935 F.2d at 1158, at least a portion of Beckner's claim had potential merit. It is difficult to accept that there is no judicial remedy for an incorrect denial of FECA benefits, though that is what Congress intended. *See Lindahl v. Office of Personnel Management*, 470 U.S. 768, 779–80, 105 S.Ct. 1620, 1627–28, 84 L.Ed.2d 674 (1985); *Rodrigues v. Donovan*, 769 F.2d 1344, 1347–48 (9th Cir.1985). Given the existence of a colorable constitutional claim, however, I cannot find that a competent attorney would not have brought this lawsuit, especially in such compelling circumstances. While counsel's conduct has certainly not been exemplary,[2] it is not sanctionable. Accordingly,

IT IS ORDERED THAT summary judgment in favor of the defendants is GRANTED and this action is DISMISSED; and

IT IS FURTHER ORDERED that defendants' request for the imposition of Rule 11 sanctions against plaintiff's counsel is DENIED; and

IT IS FURTHER ORDERED that defendants' motion for protective order to stay discovery is DENIED as moot.

---

**2.** For example, counsel cited only the federal mandamus statute in the complaint and provided no authority to support the motion for TRO and injunctive relief. He gave the court no indication whatsoever of the specific duty the defendants allegedly owed to Beckner to justify issuance of the writ or an injunction, failing to recognize that a mandamus action was plainly barred by the FECA.

In addition, his response to the motion for summary judgment was inappropriate. Counsel submitted the affidavit of the plaintiff, Linda Beckner, apparently to rebut the defendants' factual allegations. The affidavit incorporates an excerpt from the deposition of third party, a quotation of the prayer for relief from the complaint, a response to the defendants' request for sanctions against counsel, a motion for summary judgment and counsel fees, and a number of non-factual, argumentative statements about the case. One is hard-pressed to find any statements based on Beckner's personal knowledge, setting forth facts that would be admissible in evidence and involving matters about which she would be competent to testify. *See* Fed.R.Civ.P. 56(e). Counsel continues to file pleadings related to the motion without leave of court, though the deadline for submission has long passed.

Other documents reflect counsel's consistent combative attitude toward the defendants, though in many circumstances increased cooperation would have better served his client's interests.