Ted KNOWLES, Plaintiff,

v.

**NEW YORK CITY DEPARTMENT OF CORRECTIONS, et al., Defendant.**

No. 93 Civ. 8920 (JGK).

United States District Court, S.D. New York.

Nov. 17, 1995.

Ted Knowles, Attica, NY, pro se.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (Elizabeth A. Wright, of counsel), for defendant New York City Department of Corrections, et al.

## OPINION AND ORDER

KOELTL, District Judge:

The pro se prisoner plaintiff, Ted Knowles, has brought this action pursuant to 42 U.S.C. § 1983 against the defendant, New York City Department of Corrections ("DOC"), claiming that his Eighth Amendment right to be free from cruel and unusual punishment has been violated. The plaintiff alleges that he was slashed across the face by a fellow prisoner, that he required sixty stitches as a result, that the prison guards were aware of the risk to him or were deliberately indifferent to the risk of injury, and that as a result,

he was subjected to cruel and unusual punishment.

### I.

While the plaintiff named various "John Doe" defendants, he has never named or served them. The defendant DOC has moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, claiming that there are no issues of material fact and that it is entitled to judgment as a matter of law. The DOC argues that it cannot be liable for a constitutional violation unless the prison guards were themselves liable for such a violation. The DOC argues that the undisputed facts establish that the guards did not have the sufficient subjective state of mind necessary for an Eighth Amendment violation and therefore summary judgment dismissing this action is appropriate.[1]

During the relevant time, the plaintiff was a prisoner in the punitive segregation unit of the Otis Bantum Correction Center (also known as the North Facility) at Rikers Island. The North Facility is a housing unit for inmates who are being disciplined for poor behavior. Inmates in the North Facility are kept locked in their cells at all times, except for a daily one hour recreation period, which usually takes place at 10:00 a.m.. Knowles Dep. at 56.

On July, 8, 1993, at 10:15 a.m., the plaintiff and approximately twelve other inmates from the North Facility were escorted to the recreation area for their daily recreation period. The recreation area, or yard, is a rectangular fenced-in area with a basketball court in the center surrounded by a five-foot strip of blacktop. Knowles Dep. at 61–62. The North Facility and the yard entrance gate are at one end of the recreation area and the river is at the opposite end. According to the plaintiff, the prison guards normally would strip search the prisoners before al-

---

1. The DOC could not be vicariously liable for a constitutional violation by the guards. *See Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, the DOC could only be liable if, for example, the violations were part of a pattern or practice. *Id.* at 691, 98 S.Ct. at 2036. The DOC deliberately chose, as DOC's counsel acknowledged at oral argument, not to raise the absence of a pattern or practice on this motion, but instead to rely solely on the argument that there was no underlying constitutional violation by the guards, and to argue that it was unnecessary to reach the question of whether any such constitutional violation was part of a pattern or practice of the DOC.

lowing them to enter the yard. However, on this day, the guards merely "patted down" each prisoner. Knowles Dep. at 56, 58.

There were three corrections officers guarding the yard on July 8, 1993; two inside the fence and one outside the fence. One of the officers inside the fence and the officer outside the fence were speaking to one another halfway between the gate and the far end of the recreation area during the relevant time. Knowles Dep. at 65–68. The other officer inside the fence was near the entrance gate.

Knowles was seated on the ground at the end of the yard opposite the gate and was speaking with another inmate. Knowles Dep. at 65–67. He was facing the river with his back to the North Facility and to the other inmates in the yard. Knowles Dep. at 65–67. Knowles noticed a group of inmates walking in his direction, but did not feel threatened because he had never had any problems with other inmates at the North Facility, including those approaching him. Knowles Dep. at 72–73.

While Knowles was seated, at least two other inmates suddenly and unexpectedly came up from behind him and slashed the left side of his face with a sharp instrument. Knowles Dep. at 54, 72–73, 82–84. Knowles turned around in time to see his attackers walking away and to observe the corrections officers commanding them to halt. Knowles Dep. at 84. Knowles covered his wound with his hands and walked across the yard to the gate. Halfway across the yard, he was met by a corrections officer and by the time he reached the gate, approximately ten corrections officers and two captains had arrived in response to the incident. Knowles Dep. at 84–90. Plaintiff was taken first to the North Facility infirmary, then to a public hospital where approximately sixty stitches were necessary to close his wound. Knowles Dep. at 107–108. At least one of the attackers was apprehended. Knowles Dep. at 114.

The plaintiff claims that, in the infirmary just after the incident, an unnamed corrections officer told the plaintiff that the plaintiff was not at fault for the attack, but that it was the result of a "war" between Spanish and Jamaican inmates in another part of the facility. Knowles Dep. at 54. According to the plaintiff, the corrections officer told him that Jamaican inmates had "cut" a Spanish inmate at "HDM", another part of the Rikers Island prison facility, in connection with the "war", and that the Spanish inmate subsequently had been moved to the North Facility. Knowles Dep. at 54. The corrections officer told the plaintiff in the infirmary that other Spanish inmates (although not the particular Spanish inmate who had been cut since he was not in the yard on the day in question) were responsible for the plaintiff's injuries and that their actions were in retaliation for the Jamaican inmates' attack on the Spanish inmate.

The plaintiff alleges that there were circumstances that targeted him as an obvious potential victim. The plaintiff is not a Jamaican; he does, however, have long "dreadlocks", a hairstyle which could be associated with Jamaicans. Also, the plaintiff was born and raised in St. John, Antigua and speaks with a Caribbean accent. The plaintiff claims that he had absolutely no knowledge or involvement in the "war" between the Jamaican and Spanish inmates until this incident, Knowles Dep. at 100, and thus, he did not and could not warn prison officials of any threat to his safety.

## II.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

When a pro se litigant is involved, although the same standards for summary judgment apply, the pro se litigant "should be given special latitude in responding to a summary judgment motion." *Gonzalez v. Long,* 889 F.Supp. 639 (E.D.N.Y.1995); *see also Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) ("special solitude should be afforded pro se litigants generally, when confronted with motions for summary judgment"); *Ruotolo v. Internal Revenue Serv.,* 28 F.3d 6, 8 (2d Cir.1994) ("The failure of a district court to apprise pro se litigants of

the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal."); *Delgado v. Koehler,* No. 90 Civ. 7066, 1993 WL 227715, at *1 (S.D.N.Y. June 22, 1993) ("it would be premature to accept all the facts contained in defendant's Rule 3(g) statement simply because of [pro se] plaintiff's initial failure to file a response").[2]

In this case, the plaintiff's memorandum in opposition to summary judgment refers to no evidence of record, no affidavits, and no deposition excerpts, not even the plaintiff's own deposition. The defendant, however, did include excerpts from the plaintiff's own deposition in support of its memorandum. It is apparent, though, that the defendant DOC is relying on the pro se plaintiff's failure to bring forth evidence to support his claim for an Eighth Amendment violation—particularly his failure to present evidence on the state of mind of the prison guards—rather than making an affirmative showing that the plaintiff is not entitled to summary judgment because the facts do not support his claim. In this case, as explained below, it is not necessary to afford the pro se plaintiff another opportunity to present evidentiary materials to rebut the defendant's motion for summary judgment because, on the record before the Court, there are genuine issues of material fact that preclude summary judgment in any event.

### III.

The plaintiff claims, as a result of the attack on him at the North Facility, that his Eighth Amendment right to be free from cruel and unusual punishment has been violated. U.S. Const. amend. VIII; *see also Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1982) (the Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment). The standards to be applied to an Eighth Amendment claim by a prison inmate were explained recently by the

---

**2.** In general, courts construe pro se pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (the pro se complaint is to be "liberally construed"). These pleadings are to be held to "less stringent standards than formal pleadings drafted by lawyers". *Id.* at 520, 92 S.Ct. at 595; *see also Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

Supreme Court in *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994):

> In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners.... The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' ... '[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.' ... Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'

*Id.,* at —— – ——, 114 S.Ct. at 1976–77 (citations omitted). The plaintiff's burden consists of both objective and subjective elements—the plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard and that the charged prison officials acted with a sufficiently culpable state of mind. *Id.,* at ——, 114 S.Ct. at 1977; *see Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Koehl v. Dalsheim,* No. 94 Civ. 3351, 1995 WL 331905, at *3 (S.D.N.Y. June 5, 1995).

A "sufficiently serious" deprivation is met when a "prison official's act or omission ... result[s] in the denial of the 'minimal civilized measure of life's necessities'." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). It is clear that the injury sustained by the plaintiff, a deep cut to his face which required sixty stitches to close, and the manner in which he received the injury, having his face suddenly and unexpectedly slashed with a sharp instrument possessed by a fellow inmate, constitutes a "denial of the 'minimal civilized measure of life's necessities'", *Id.,* and easily satisfies the objective element of an Eighth Amendment claim. *See also Pippion v. Peters,* No. 93 Civ. 3492, 1994 WL

530801, at *1 (N.D.Ill.1994) (assault from fellow inmates resulting in fourteen stitches in the prisoner's right eye and eleven in the left was sufficiently serious deprivation).

The subjective element of an Eighth Amendment claim, the culpable state of mind of the prison officials, is less clear in this case. In *Farmer,* the Supreme Court reaffirmed that "deliberate indifference" as well as intentional acts may satisfy the culpability requirement for an Eighth Amendment claim. The Supreme Court adopted a subjective rather than objective test for deliberate indifference. "Deliberate indifference" may be found when a prison official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979. This standard is akin to the criminal law standard of recklessness. *Id.,* at ——, 114 S.Ct. at 1980.

The failure of prison guards to employ reasonable measures to protect an inmate from violence by other prison inmates has been considered cruel and unusual punishment. *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985). However,

> [A]n isolated omission to act by a state prison guard does not support a claim under § 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him.

*Id.* (citing *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974)). In Eighth Amendment cases dealing with the failure to prevent harm, "[r]eckless disregard of plaintiff['s] right to be free from attacks by other inmates may be shown by the existence of a 'pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk.'" *Rucco v. Howard,* No. 91 Civ. 6762, 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993) (quoting *Martin v. White,* 742 F.2d 469, 474 (8th Cir. 1984)); *see Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (per curiam) (risk of harm to plaintiff due to repeated threats by fellow

inmates of which prison guard was aware supports a claim under § 1983). Mere negligence, however, on the part of a prison official will not give rise to a claim under § 1983. *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir.1974).

As the Supreme Court explained in *Farmer*, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1981.

■ Under the standards set out above, there are genuine issues of material fact concerning whether the prison guards acted with deliberate indifference when they performed the "pat-down" searches and guarded the plaintiff in the recreation area on July 8, 1993. There is evidence that prison officials were aware that there was a "war" going on between Jamaican and Spanish inmates that put those inmates at risk of substantial harm, that a Spanish inmate recently had been cut allegedly in connection with the "war" and had been transferred to the North Facility, and that the plaintiff, due to his physical characteristics and accent, "belonged to an 'identifiable group of prisoners' for whom 'risk of ... assault [was] a serious problem of substantial dimensions.'" *Walsh v. Mellas*, 837 F.2d 789, 793 (7th Cir.1988) (quoting *Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir.1984)). *Compare Farmer*, —— U.S. at ——————, 114 S.Ct. at 1984–85 (transsexual prisoner's appearance and prison officials' statements that inmate's youth, non-violence and feminine appearance made him "likely to experience a great deal of sexual pressure" suggested prison officials knew that the inmate's safety would be in jeopardy if he was housed with the general prison population).

Examining all the evidence presented in the light most favorable to the nonmoving party, summary judgment must be denied because there are genuine issues of material fact in dispute. Particularly in dealing with a pro se plaintiff, the Court must examine with careful scrutiny the papers presented by each side. In this case, there is evidence that raises genuine issues of material fact

whether the guards acted intentionally or with reckless disregard for the plaintiff's right to be free from the risk of harm. *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (citing *Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984)). Further, while this evidence exists in the record, the defendant has failed to come forward with some of the most obvious evidence to attempt to show that there is no genuine issue of material fact. For example, the DOC has not submitted a single affidavit from any guard or prison official explaining the circumstances of the attack on the plaintiff and attesting to the lack of awareness of the particularized risk to the plaintiff. *Compare Farmer*, —— U.S. at ——, 114 S.Ct. at 1982 (explaining various defenses and explanations that might be raised by prison officials). The defendant appears to seek to take advantage of the pro se plaintiff's failure to obtain the evidence from the prison guards. However, the defendant itself could have presented that evidence to the Court, and the Court does have a responsibility to assure that an otherwise meritorious claim is not dismissed simply because a pro se plaintiff did not know how to go about pursuing it. In any event, in determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party, and in light of the Court's heightened duty of scrutiny with regard to motions for summary judgment when a pro se litigant is involved, the Court finds that based on the current record there are indeed issues of fact suitable for trial.

For all of the foregoing reasons, the defendant's motion for summary judgment is denied. The Court will place the case on the list of cases appropriate for the appointment of *pro bono* counsel.

**SO ORDERED.**