William BYRD, Plaintiff,

v.

Catherine M. ABATE, Commissioner of Correction; "John Doe," Correction Officer, Anna M. Kroll Correctional Facility, and David N. Dinkins, Mayor of the City of New York, Individually and in their official capacities, Defendants.

No. 93 Civ. 1489 (RWS).

United States District Court,
S.D. New York.

Oct. 31, 1996.

Anna Stern, New York City, for Plaintiff.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (F. Dunn–Jones, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Defendants in this action brought pursuant to 42 U.S.C. § 1983 ("Section 1983") have moved, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment. For the reasons set forth below, defendants' motion will be denied.

### Parties

Plaintiff William Byrd ("Byrd") was, at the time of the incident which gave rise to this lawsuit, an inmate at the Anna M. Kross Correctional Facility ("AMKC") at Rikers Island.

Defendant Wade Hults ("C.O. Hults") is a Corrections Officer employed by the New York City Department of Correction. At the time of the incident which gave rise to this lawsuit, C.O. Hults was working as a correctional officer at AMKC.

Defendant Catherine M. Abate became the Commissioner of the N.Y.C. Department of Correction on April 27, 1992. Defendant David Dinkins was the Mayor of New York City at the time plaintiff was injured.

### Prior Proceedings

Byrd filed the complaint in this Section 1983 action on March 11, 1993. Byrd's municipal liability claims against Dinkins and Abate were bifurcated from Byrd's claims against C.O. Hults pursuant to a stipulation between the parties which was so ordered by this Court on June 30, 1994. Pursuant to the order of bifurcation, no discovery has been taken regarding municipal liability.

On March 7, 1996, Byrd's motion for an order pursuant to Rule 37(a) Fed.R.Civ.P. was granted to the extent that defendants were ordered to produce: (1) a training manual and any other material offered to defen-

dant C.O. Hults at the course he had voluntarily attended concerning the supervision of mental health inmates, (2) the Department's "rules and regulations" and institutional and post orders regarding whether C.O. Hults was authorized to leave his post, and (3) an on-site visit to Lower-3 housing area at the AMKC at Rikers Island. The on-site visit was conducted on March 26, 1996. Copies of the documents were to be produced in thirty days, on or before April 6, 1996.

By letter dated April 8, 1996, Assistant Corporation Counsel for defendants informed the Court that most of the training manual, and part of the institutional and post orders for 1991 had been located, but that the Department needed additional time to assemble the remaining documents, "if they can be located." On April 9, 1996, plaintiff's counsel wrote to this Court indicating that she had no objection to an extension of the defendants' time to produce said documents, but requesting immediate production of those portions of the documents already located. On April 23, 1996, defendants produced material pertaining to mental health training in 1991, and stated that the post and institutional orders in effect in 1991 for Lower 1 and 3 housing area could not be located.

Defendants filed the instant motion to dismiss on May 15, 1996. Plaintiff filed a cross-motion to compel discovery and for sanctions for non-compliance with previous discovery orders of this Court. Oral argument on defendants' motion and plaintiff's cross-motion was heard on September 11, 1996, at which time the parties reached an agreement resolving plaintiff's discovery motion, and defendants' motion for summary judgment was considered fully submitted.

## Facts

In deciding a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2nd Cir. 1994). The facts as presented here are construed accordingly, and they are limited to this motion.

In October, 1991, Byrd was in the custody of the New York City Department of Correction for a parole violation and was confined on Rikers Island. Upon his arrival at Rikers Island, Byrd had undergone routine screening to determine his security classification, pursuant to the Department of Corrections policy to classify and separate inmates who posed a threat to the security of the facility, each other, or themselves, because of their risk of violence. The policy provides that inmates are to be classified based upon the severity of the current charges and/or warrants; prior convictions, especially violent crimes and escapes; and information about the inmate's prior institutional behavior.

Once an inmate is classified, his score determines the housing area with the appropriate level of security, and, if indicated, with special medical or social attention. Byrd had been recommended by a social worker for mental observation.

Late in the evening of October 3, 1991, or early in the morning of October 4, 1991, plaintiff was transferred to a cell located in the Lower 3 housing area. All the inmates in this housing area had been determined to be suffering from some type of mental illness and to be in need of mental observation. At approximately 9:30 on the morning of October 4, 1991, plaintiff was released from his cell and went to the recreation room ("Common Room") of the Lower 3 housing area, where he sat down and watched television. Once in the Common Room, he did not speak to anyone and no one spoke to him.

Less than 20 minutes after his arrival in the Common Room, Byrd was assaulted by an inmate who struck Byrd with an object, seriously injuring his left eye, and causing it to be removed from the socket. As a result, plaintiff is now completely blind in his left eye, and the eyesight in his right eye is deteriorating. Byrd's assailant has never been identified. Byrd had not had any dis-

8

## 584

putes with any other inmates, he had not incited or provoked the inmate who assaulted him, and is unaware of why any other inmate would want to harm him.

The attack took place while Byrd and his assailant were under the watch of C.O. Hults. C.O. Hults had left his post—the C post—to relieve the Correction Officer stationed at the A post, while that officer took a "personal" to go to the bathroom. The Common Room in the Lower 3 housing area is visible from the A post correction officer's station, but C.O. Hults was not watching Lower 3 through the windows of the booth and did not see plaintiff being struck. C.O. Hults only became aware of the assault on Byrd when he heard a "commotion," looked up and saw Byrd walking towards him and holding his eye. C.O. Hults met Byrd at the gate leading to the A post and asked him what happened. Byrd did not respond. Hults saw blood on Byrd's hand and took him across the hall to the clinic.

C.O. Hults left Byrd with the medical staff and returned to the Common Room to question the inmates there. None of the inmates saw the assault on Byrd. The incident was further investigated by Captain Keith Miller. Byrd told Captain Miller that an inmate punched him in the eye. Captain Miller spoke to five inmates, and each submitted a written statement indicating that they did not see when Byrd was struck in the eye. Captain Miller never determined how plaintiff was injured, with what instrument, and who was responsible.

Prior to the assault on Byrd, C.O. Hults had voluntarily attended a Department of Corrections training session on the supervision of mental health inmates, which included the film "Supervising Special Inmates." According to the evidence submitted in connection with this motion, Department of Corrections rules prohibit officers from leaving their post without the permission of a superior officer or proper relief.[1] C.O. Hults testified at deposition that his normal

duties required him to make regular security inspections and safety tours, and that accordingly, he was not required to remain at all times in the Common Room.

### Discussion

### I. The Standard for Summary Judgment

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Silver v. City Univ., 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2nd Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir.1988); Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If there is any evidence in the record regarding the issues on which summary judgment is sought from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See Knowles v. New York City Dept. of Corrections, 904 F.Supp. 217, 220 (S.D.N.Y.1995).

### II. A Question of Fact Remains

Defendants argue that summary judgment is warranted here because there is no question of material fact as to whether C.O. Hults acted with "deliberate indifference" to a substantial risk of serious harm to

---

1. The only evidence regarding C.O. Hults' duties thus far submitted—the 1977 General Rules and Regulations of the City of New York Department of Correction—states that an officer "shall not leave his post or place of assignment ... without permission of his superior officer.... [and] shall not be permitted to leave until properly relieved." See Section 3.05.090. As set forth above, defendants have been unable to locate, and therefore have not produced, the rules in effect in 1991 at the time of the incident.

Byrd, as required to establish an Eighth Amendment violation. The Eighth Amendment imposes duties on prison officials to ensure that inmates receive "adequate food, clothing, shelter and medical care, and [in addition, prison officials] must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200–3201, 82 L.Ed.2d 393 (1984)). Specifically, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1976 (quoting *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.) (citation omitted), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988)).

■ However, a prison official is not liable for every injury imposed by a prisoner upon a fellow inmate. The test to determine liability contains both an objective and a subjective element. A prison official only violates the Eighth Amendment when the alleged deprivation is objectively sufficiently serious and the prison official charged acted with a sufficiently culpable state of mind. *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1977; *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999–1000, 117 L.Ed.2d 156 (1992).

■ With respect to the objective component of the deliberate indifference test, a "sufficiently serious" deprivation occurs when a "prison official's acts or omission ... result[s] in the denial of 'the minimal civilized measure' of life's necessities." *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1977 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981)). In *Knowles v. New York City Dept. of Corrections,* 904 F.Supp. 217, 220 (S.D.N.Y. 1995), the court held that plaintiff's injury, a deep cut to plaintiff's face, inflicted by a sharp instrument in the possession of another inmate, and requiring sixty stitches to close, constituted such a denial and readily satisfied the objective element of an Eighth Amendment claim. *Id.* at 221.

■ In the instant case, Byrd was blinded in his left eye when a fellow inmate stabbed him with an unknown instrument. The loss of an eye plainly constitutes a "denial of the 'minimal civilized measure of life's necessities.'" *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1977 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399–2400; *see also Pippion v. Peters,* No. 93 Civ. 3492, 1994 WL 530801, at *3 (N.D.Ill.1994) (assault by fellow inmates resulting in fourteen stitches in prisoner's right eye and eleven in left was sufficiently serious deprivation)). Accordingly, Byrd has satisfied the objective element of his Eighth Amendment claim.

■ With respect to the subjective element, the "sufficiently culpable" state of mind in an Eighth Amendment claim against a prison official is one of "deliberate indifference" to an inmate's health or safety. *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1977 (quoting *Wilson v. Seiter,* 501 U.S. 294, 302–303, 111 S.Ct. 2321, 2326–2327, 115 L.Ed.2d 271 (1991)). To show deliberate indifference, an inmate must show that the prison official charged knew that the inmate faced a substantial risk of serious harm, and disregard that risk by failing to take reasonable measures to abate it. *Id.* 511 U.S. at ——, 114 S.Ct. at 1984.

■ With respect to C.O. Hults' knowledge of the harm faced by Byrd, it is undisputed that there was no history of tension or hostility between Byrd and any of the other inmates in the Lower 3 housing area, and that Byrd did not notify C.O. Hults or any officer of a threat to his safety and did not feel threatened. However, under *Farmer,* an inmate need not show that he faced an excessive risk of attack for reasons unique to him; an inmate's Eighth Amendment claim of deliberate indifference may also rest on an assertion that the inmate faced an excessive risk of attack shared by other inmates in his situation. *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1982.

■ The evidence demonstrates that C.O. Hults was aware that plaintiff, due to his placement in Lower 3, belonged to an identifiable group of prisoners who were at risk of substantial harm. All inmates located within C.O. Hults' post—post C—were receiving services from the Rikers Island Men-

586

tal Health Center. Psychiatric evaluations confirm that Byrd, like all Lower 3 inmates, posed a clear danger of injury to himself or to others. *See Knowles,* 904 F.Supp. at 222 (prisoner's physical characteristics and accent, as well as prison officials' statements that "war" was going on between Spanish and Jamaican inmates suggested inmate was at risk of substantial harm). In addition, C.O. Hults voluntarily participated in a special mental health training which included the film "Supervising Special Inmates" in preparation for his assignment in Lower 3. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact ... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1981. In light of the evidence presented here, a reasonable juror could find that C.O. Hults knew of the substantial risk of harm faced by Byrd.

Likewise, a question of material fact exists as to whether C.O. Hults disregarded the risk to Byrd by failing to take reasonable measures to abate that risk. *See id.* at ——, 114 S.Ct. at 1984. Defendants maintain that Byrd has not demonstrated that C.O. Hults' actions were unreasonable. The burden, however, does not fall upon the plaintiff at this stage of the proceeding to demonstrate the unreasonableness of C.O. Hults' actions; rather, in a motion for summary judgment by defendants, it is defendants who must establish the reasonableness of their actions. *See Rodriguez,* 72 F.3d at 1060. Defendants here have not met that burden.

Accordingly, a genuine issue of material fact remains concerning whether C.O. Hults acted with deliberate indifference to plaintiff's safety when he left his assigned post and relieved the officer at the A post without supervisory permission or proper relief. Although Defendants argue that C.O. Hults was not required to be physically present in the Common Room at all times, defendants have not submitted documentary proof of this statement, nor do they address the issue of whether defendant C.O. Hults was required to obtain permission and relief in order to leave his post. The only relevant evidence provided to the court—the 1977 General Rules and Regulations of the City of New York Department of Correction (NY-DOC)—states that an officer "shall not leave his post or place of assignment ... without permission of his superior officer.... [and] shall not be permitted to leave until properly relieved." Section 3.05.090. In the absence of the relevant rules and regulations and the institutional and post orders applicable to Lower 3 in 1991, defendants' arguments are insufficient to establish that no reasonable juror could find that C.O. Hults acted with deliberate indifference in leaving his post. In sum, defendants have not demonstrated that C.O. Hults' actions were reasonable, as required to defeat this motion.

Finally, defendants' motion for summary judgment on Byrd's negligence claim will also be denied. Just as a question of fact remains regarding Hults' deliberate indifference, a question of fact remains as to whether C.O. Hults' owed and breached a duty of due care to Byrd. Because Defendants' motion for summary judgment will be denied with respect to the Section 1983 claim, Byrd's state claims will not be dismissed for lack of jurisdiction.

### Conclusion

For the reasons set forth above, defendants' motion for summary judgment is hereby denied.

It is so ordered.