**Russell E. AVEDIS, Plaintiff,**

v.

**Alexis M. HERMAN, Secretary of Department of Labor, in her official capacity, and the United States Department of Labor Office of Workers Compensation Programs, Defendants.**

No. 98 Civ. 0778(RWS).

United States District Court,
S.D. New York.

Nov. 18, 1998.

other period as may be agreed upon by the parties.

**Prior Proceedings**

Avedis *pro se* filed his complaint *in forma pauperis* on February 4, 1998, alleging statutory and constitutional violations by the Secretary.

Avedis is a former Labor Department economist who received disability benefits stemming from injuries he sustained in an automobile accident in 1988, but whose benefits were terminated by the Secretary based upon a 1992 examination and conclusions of a medical expert who found that Avedis no longer was disabled. Avedis has challenged the termination of his compensation under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et. seq,* contending that the Secretary violated the FECA by terminating his benefits based on one physician's findings without sending him to a referee medical examination in violation of 5 U.S.C. § 8123(a) and that the Secretary's actions unconstitutionally deprived him of "administrative due process."

The Secretary has moved to dismiss on the grounds of subject matter jurisdiction, the preclusion-of-review provision within 5 U.S.C. § 8128(b), and because Avedis has not alleged a cognizable claims of a constitutional violation. According to the Secretary, Avedis' allegation that the Secretary violated 5 U.S.C. § 8123(a) does not provide the Court with jurisdiction because § 8128's preclusion provision bars even a claim that the Secretary violated a clear statutory mandate. Finally, the Secretary maintains that interpretation of § 8123(a), applied in Avedis' case, is clearly reasonable and thus deprives the Court of jurisdiction.

The Secretary filed the instant motion to dismiss the complaint on July 28, 1998, which was considered fully submitted on the call of the calendar on September 2, 1998.

**The Issue**

The precipitating event in this litigation is a somewhat routine termination in 1993 of compensation for a work-related injury on the grounds that the disability from a work-related accident in 1988 was no longer present. However, Avedis, apparently a law

Russell E. Avedis, Forest Hills, NY, pro se.

Honorable Mary Jo White, United States Attorney for the Southern District of New York, New York City (David S. Jones, Assistant U.S. Attorney, of counsel), for defendants.

Office of the Solicitor, U.S. Department of Labor, Washington, DC (Pamela S. Silverman, of counsel).

*OPINION*

SWEET, District Judge.

The defendant Alexis M. Herman, Secretary, United States Department of Labor (the "Secretary"), has moved under Rule 12(b)(1), Fed.R.Civ.P. to dismiss the complaint of plaintiff Russell E. Avedis ("Avedis"). For the reasons set forth below, the motion will be treated as a motion for summary judgment and as such granted with leave to the parties to make any further submissions within twenty (20) days or such

school student at the time of termination (decision of the Hearing Representative, December 1, 1993), has raised significant issues of statutory construction and separation of powers. The Congressional attempt to preclude court review is met by the allegation of the complaint that the Secretary committed a clear violation of a statutory mandate raising the issue as to whether an agency determination of what constitutes a "disagreement" under § 8123 requiring a third physician referee raises to constitutional dimensions. If jurisdiction does exist an issue is presented as to whether the interpretation of the statute allegedly violated, which resulted in the termination, was plausible on the entire record, and the appropriate method to resolve the question.

The final issue is whether an agency determination of what constitutes a "disagreement" under § 8123 requiring a third physician referee rises to constitutional dimensions.

### The FECA Statutory Scheme

The FECA establishes a comprehensive and exclusive workers' compensation scheme for federal employees. The Act provides that, "[t]he United States shall pay compensation for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty...." 5 U.S.C. § 8102(a). A wide range of benefits are provided for work-related injuries covered by the FECA, including payment of wage loss compensation, schedule awards for permanent loss or loss of use of specified members of the body, related medical costs and vocational rehabilitation.

Under the FECA statutory scheme, the Secretary of Labor has the authority to administer and to decide all questions arising under the Act. 5 U.S.C. § 8145. The FECA further authorized the Secretary to prescribe rules and regulations necessary for the administration and enforcement of the Act. 5 U.S.C. § 8149. The Secretary has delegated the authority provided by §§ 8145 and 8149 to the Director of the Office of Workers' Compensation Programs ("OWCP"), who administers and implements the FECA. 20 C.F.R. § 10.2. Congress directed the Secretary to create, within the rules and regula-

tions promulgated to implement the FECA, an Employees' Compensation appeals Board ("ECAB"), with the authority to hear and, subject to applicable law and the rules and regulations of the Secretary, to make final decisions on appeals taken from determinations and awards with respect to claims of employees. 5 U.S.C. § 8149; 20 C.F.R. § 10.301.

The applicable regulations provide that "once OWCP has accepted a claim and paid compensation, it has the burden, before terminating ... compensation, of establishing by the weight of the evidence that the disability for which compensation was paid has ceased." 20 C.F.R. § 10.110. In evaluating medical evidence during the administration of a claim, § 8123(a) of the FECA provides, in pertinent part, that "[i]f there is a disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall resolve the conflict." 5 U.S.C. § 8123(a). The Secretary's regulations mirror the statutory language of § 8123(a), adding the requirement that the third physician be qualified in the appropriate specialty. 20 C.F.R. § 10.408.

If a claimant considers himself or herself aggrieved by OWCP's final determination, the FECA provides avenues for administrative review. From the date of the decision, the claimant may: 1) within 30 days, request a hearing before an OWCP hearing representative or request that such representative review the written record, 5 U.S.C. § 8124, 20 C.F.R. § 10.131; 2) within one year, request reconsideration, 5 U.S.C. § 8128, 20 C.F.R. § 10.128; or 3) within one year, file an appeal with ECAB. 20 C.F.R. § 10.139.

The Act expressly precludes judicial review of administrative determinations under FECA. 5 U.S.C. §§ 8116(c), 8128(b).

The FECA statute provides:

The action of the Secretary or h[er] designee in allowing or denying a payment under this subchapter is—

(1) *final and conclusive for all purposes* and with respect to all questions of law and fact; and,

(2) *not subject to review* by another official of the United States or *by a Court by mandamus or otherwise.*

5 U.S.C. § 8128(b) (emphasis added).

### Avedis' FECA Claim

On June 24, 1988, Avedis was involved in a motor vehicle accident while in the performance of his duties as an economist employed by the United States Department of Labor and filed a claim for injuries sustained in this accident. OWCP accepted the claim for a cervical strain and authorized continuation of pay from June 24, 1988 through August 8, 1988. Avedis thereafter received compensation for wage loss due to temporary total disability, beginning October 19, 1988.

In December 1992, OWCP sent Avedis for a second opinion examination to Dr. Allen G. Adams, a board-certified orthopedic surgeon, to determine the status of his work-related disability. After a medical examination, diagnostic studies, and a review of the medical record, Dr. Adams reported on December 16, 1992 that "this individual seems to have complaints of pain far out of proportion to his objective findings which are essentially nonexistent" and that Avedis should be "able to return to work from a full day standpoint and participate in manual labor if necessary, based upon the objective findings of a normal EMG and nerve conduction studies, normal MRI of the cervical spine, [and] essentially normal CT scan of both the cervical and lumbar spines." Dr. Adams concluded that there was "no indication of disability as a result of the motor vehicle accident of June 24, 1988."

On January 19, 1993, OWCP issued Avedis a notice of proposed termination of compensation on the basis that the medical evidence did not support "residual orthopedic disability/medical condition causally related to the June 24, 1988 work injury."

In response, Avedis submitted the February 9, 1993 report of his attending physician, Dr. Leonard R. Harrison, Jr., a board-certified orthopedic surgeon, who diagnosed "chronic traumatic cervical myofascitis with aggravation and activation of a preexisting cervical type syndrome"[1] that Dr. Harrison stated was causally related to the June 24, 1988 accident. Dr. Harrison stated that "[f]rom a Social Security standpoint (unable to do any work whatsoever), [Avedis] is clearly not disabled." However, Dr. Harrison stated that Avedis was disabled from "doing manual labor." Avedis subsequently submitted two brief addenda dated March 24, 1993 and August 14, 1993 to Dr. Harrison's report, as well as the October 14, 1993 report of Dr. Laurence Altshuler, a board-certified internist. In a February 24, 1993 order, OWCP terminated Avedis' compensation effective March 7, 1993, on the basis that the weight of the medical evidence, as represented by the report of Dr. Allen Adams, established that Avedis had no further condition or disability causally related to the June 24, 1988 accident.

Avedis requested a hearing before an OWCP hearing representative. In a December 1, 1993 decision following the hearing, the hearing representative affirmed OWCP's Order of Termination, finding that OWCP had met its burden of proof to justify termination of Avedis' compensation benefits. Avedis then appealed to ECAB. In its June 20, 1997 Decision and Order, ECAB affirmed OWCP's December 1, 1993 Order of Termination, finding that the weight of the medical evidence established that Avedis' disability from his 1988 work injury had ended by March 7, 1993. ECAB found that the report of Dr. Adams constituted the most reliable and probative evidence on the issue of Avedis' continued disability from his work injury as it reflected a thorough physical examination, the results of diagnostic studies, and contained convincing rationale. ECAB further found that the reports of Dr. Harrison and Dr. Altshuler were of little probative value because they did not adequately address the issue of disability, *i.e.,* they did not provide specific work restrictions resulting from the employment injury or otherwise indicate whether they believed Avedis was capable of performing his date-of-injury job

---

1. In a January 6, 1989 report, Dr. Harrison had noted that Avedis had a permanent partial disability of the cervical spine and concussional "problems" related to an old motor vehicle accident. Markey Decl. ¶ 5.

as an economist and that Dr. Harrison only stated that Avedis was disabled from performing "manual labor."

Avedis requested reconsideration of ECAB's June 20, 1997 decision, which was denied by order dated November 17, 1997.

### Discussion

#### I. There is Jurisdiction to Review the Secretary's Decision

■ The Supreme Court has characterized § 8128(b) as a model preclusion-of-review statute, noting that Congress uses such "unambiguous and comprehensive language" as found in that statute "when [it] intends to bar judicial review altogether." *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 779–80, n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *see also Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the [Secretary's] determination of FECA coverage") (citing *Lindahl* ).

A number of courts have upheld the position that § 8128(b) explicitly bars judicial review of any decision by the Secretary or her designee in allowing or denying a payment pursuant to FECA. *See, e.g., Czerkies v. United States Dep't of Labor*, 73 F.3d 1435 (7th Cir.1996) (*en banc* ); *Brumley v. United States Dep't of Labor*, 28 F.3d 746 (8th Cir. 1994), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 734, 130 L.Ed.2d 637 (1995); *Woodruff v. United States Dep't of Labor*, 954 F.2d 634 (11th Cir.1992); *Rodrigues v. Donovan*, 769 F.2d 1344 (9th Cir.1985). *See also Blanc v. United States*, 244 F.2d 708, 709–10 (2d Cir.) (*per curiam* ), *cert. denied*, 355 U.S. 874 (1957) (preclusion language within section 42 of the then-applicable provision, codified at former 5 U.S.C. § 793, required dismissal for lack of jurisdiction of complaint of widow of federal employee whose claim was denied).

Avedis has alleged that the Secretary's actions are an "unconstitutional deprivation of administrative due process." Compl. ¶ 21. He asks this Court to enjoin the Secretary from processing his claim in a manner which is "procedurally unconstitutional and contrary to the statutory mandate of Title 5

U.S.C. § 8123(a) which granted specific procedural guarantees to claimants and the plaintiff which the defendants failed to follow." Compl. at 8.

Courts have recognized a limited exception to § 8128(b) permitting them to consider substantial, cognizable constitutional claims. *See Johnson v. Robison*, 415 U.S. 361, 367, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Czerkies*, 73 F.3d at 1441–43; *Rodrigues*, 769 F.2d at 1348; *Paluca v. Secretary of Labor*, 813 F.2d 524, 526–27 (1st Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987). In *Czerkies*, an *en banc* panel of the Seventh Circuit found that a "garden-variety claim for benefits" to which a constitutional label is affixed is barred by section 8128(b). 73 F.3d at 1443. Similarly, in *Rodrigues*, the Ninth Circuit explicitly ruled that "[a] mere allegation of a constitutional violation" is not sufficient to avoid the preclusive effect of § 8128(b). *Rodrigues*, 769 F.2d at 1348.

■ Avedis' constitutional claim apparently is that the Secretary violated his Fifth Amendment right to due process. The essential requirements of procedural due process are that a deprivation of life, liberty or property be preceded by "notice and an opportunity to respond." *Cleveland Board v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Avedis claims that OWCP's failure to find a conflict in medical opinion and its consequent failure to refer him to a referee physician prior to terminating his benefits violated the "clear statutory mandate" of section 8123(a) of the FECA. Such an allegation brings into play serious constitutional issues.

In *Board of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), the Supreme court held that Congress may insulate certain agency actions from review even where they are alleged to violate a clear statutory mandate. In that case, MCorp, a bank holding company, sought to enjoin the Board of Governors of the Federal Reserve System from prosecuting an administrative proceeding against it for alleged violation of a Board regulation. The Supreme Court reversed a Fifth Circuit ruling that the Board's promulgation and

enforcement of the regulation exceeded its statutory authority and that, therefore, even though the judicial review provisions of the relevant banking regulatory statute explicitly stated that no court had jurisdiction to enjoin the Board's administrative proceedings, the district court did have jurisdiction to issue an injunction. In reaching the decision reversed by the Supreme Court, the Fifth Circuit had relied on *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), in which the Supreme Court authorized district courts to review, despite an express finality provision, National Labor Relations Board ("NLRB") action "in excess of [NLRB's] delegated powers and contrary to a specific prohibition in the [National Labor Relations] Act" that was "clear and mandatory." 358 U.S. at 188, 79 S.Ct. 180. In *Kyne*, the NLRB conceded that it had taken action that was expressly prohibited by the statute. The Supreme Court characterized the NLRB's order as "an attempted exercise of power that had been specifically withheld." *Id.* at 189, 79 S.Ct. 180.

In *Oestereich v. Selective Service System Local Bd. No. 11, Cheyenne, Wyoming*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Supreme Court had followed its decision in *Leedom v. Kyne* to permit review of a final decision of a Selective Service Board refusing to give a registrant a draft exemption even though he met all the statutory prerequisites. The registrant was classified as exempt under section 6(g) of the Selective Service Act. However, because of the registrant's acts of protest, the Board declared petitioner delinquent pursuant to its regulations. The Court found that in this situation, where "there is *no exercise of discretion* by a Board in evaluating evidence and in determining whether a claimed exemption is deserved ... [there was] a clear departure by the Board from its statutory mandate." *Oestereich*, 393 U.S. at 238, 89 S.Ct. 414 (emphasis added).

The Supreme Court in *MCorp* rejected the court of appeals' "interpretat[ion of] our opinion in *Kyne* as authorizing judicial review of any agency's statutory authority." 502 U.S. at 43, 112 S.Ct. 459. The Court proceeded to analyze the language of the preclusion-of-review provision involved and

the effect that its strict application would have before deciding not to recognize a "*Leedom v. Kyne* exception" to the provision's broad terms. 502 U.S. at 43–44, 112 S.Ct. 459, stating:

In this litigation, the Court of Appeals interpreted our opinion in *Kyne* as authorizing judicial review of any agency action that is alleged to have exceeded the agency's statutory authority. *Kyne*, however, differs from this litigation in two critical ways. First, central to our decision in *Kyne* was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights.

"Here, differently from the *Switchmen's* case, 'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress' has given professional employees, for there is no other means, within their control ... to protect and enforce that right." *Ibid.*

The cases before us today are entirely different from *Kyne* because FISA expressly provides MCorp with a meaningful and adequate opportunity for judicial review of the validity of the source of strength regulation. If and when the Board finds that MCorp has violated that regulation, MCorp will have, in the Court of Appeals, an unquestioned right to review of both the regulation and its application.

*MCorp*, 502 U.S. at 43–44, 112 S.Ct. 459 (emphasis added).

Thus while the Supreme Court concluded that the presumptive provision in the Financial Institutions Supervisory Act of 1966 ("FISA"), 80 Stat. 1046, as amended, 12 U.S.C. § 1818 *et seq.*, trumped the bankruptcy court automatic stay, it did so recognizing that FISA provided for judicial review in the Court of Appeals.

Assuming, as it is alleged here, that the Secretary violated a clear statutory mandate of the FECA, *MCorp* does not in the view of this Court eliminate the judicially created exception to the preemptive provisions of FECA. If hypothetically the Secretary refused to provide employee compensation at

all defying the statutory scheme, the courts would have jurisdiction to enforce the statutory mandate.

The results are mixed in circuits that have considered or commented on whether the preclusion of review in § 8128(b) is subject to a *"Leedom v. Kyne* exception." The First Circuit's decision in *Paluca* is contrasted with the Fourth Circuit which has held under *Leedom v. Kyne* that courts have jurisdiction over claims that the Secretary violated a clear statutory mandate of the FECA. *See Hanauer v. Reich,* 82 F.3d 1304, 1309 (4th Cir.1996).[2] In *Staacke v. U.S. Secretary of Labor,* 841 F.2d 278, 281 (9th Cir.1988), decided before the Supreme Court's 1991 *MCorp* decision, the Ninth Circuit noted the existence of an exception to statutory provisions barring judicial review "where defendant is charged with violating a clear statutory mandate or prohibition." 841 F.2d at 281. *Staacke* described the exception, however, as a "narrow window left open" by the Supreme Court's decisions in *Leedom v. Kyne* and *Oestereich,* in which the challenged actions were taken in excess of delegated power and in violation of clear mandates or prohibitions in statutes under which no exercise of discretion was afforded. *Staacke,* 841 F.2d at 281–82. The Ninth Circuit held that the clear statutory mandate exception did not apply to the FECA dispute before it, stating:

> By contrast, FECA vests plenary authority in the Secretary of Labor and his authorized agents to "administer, and decide all questions arising under, [the Act]." 5 U.S.c. § 8145 (1982) ... consequently, the discretion accorded to the Secretary "to make the policy choices associated with disability decisions" is virtually limitless. Under such circumstances, there can be no review based on a violation of a clear statutory mandate.

841 F.2d at 282 (citing *Rodrigues,* 769 F.2d at 1348).

The Second Circuit has not spoken on the subject, and the weight of authority as set forth above supports the exception under the circumstances of this case, thus granting jurisdiction to this Court.

## II. *The 12(b)1 Motion is Convertible to a Rule 56 Motion for Summary Judgment*

The Secretary's motion under Rule 12(b)(1) asserting a lack of jurisdiction also claims that Avedis fails to state a cause of action because of the absence of a clear violation of a statutory mandate. It is the Secretary's position that the conclusion of ECAB that the submission of Avedis' doctors failed to create a "disagreement" on the issue of disability sufficient to call into play the medical referee provision provided by the statute, § 8123(a). Stated differently, the Secretary has asserted that Avedis has failed to state a cause of action even if he has alleged the violation of a clear statutory mandate and even if, contrary to the Secretary's view, that allegation provides the Court with jurisdiction as concluded above.

■ While as a general rule a 12(b)(1) motion cannot be converted into a motion for summary judgment under Rule 56, *see Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011; 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1366 (Supp.1986), there is, however, a widely recognized exception to this rule. If the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56. *See Timberlane v. Bank of America,* 749 F.2d 1378 (9th Cir.1984); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 733 (11th Cir.1982); *see also* J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2–1] at 12–51 (1986).

Where, as here, subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined. *See Clark v. Tarrant County,* 798 F.2d 736, 742 (5th Cir. 1986); *Timberlane v. Bank of America,* 749 F.2d at 1381–82. Accordingly, the Secre-

---

**2.** The Eighth Circuit in *Brumley* and the Sixth Circuit in *Owens v. Brock,* 860 F.2d 1363 (6th Cir.1988), both cursorily describe the law as recognizing an exception to section 8128(b) for violations of a clear statutory mandate.

tary's motion for relief under Rule 12(b)(1) will be converted to a motion for summary judgment.

## III. Standard for Summary Judgment

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Silver v. City University*, 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). If there is any evidence in the record regarding the issues on which summary judgment is sought from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Knowles v. New York City Dept. of Corrections*, 904 F.Supp. 217, 220 (S.D.N.Y.1995).

A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). Rather, the responding party "must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564 (S.D.N.Y.1995). In the absence of any dis-

puted material fact, summary judgment is appropriate.

## IV. Avedis Failed to Establish a Violation of a Clear Statutory Mandate

When presented with a claim such as this, a court must first "conduct a 'cursory review of the merits' of the case to determine whether the Secretary violated a clear statutory mandate." *Hanauer*, 82 F.3d at 1309 (citation omitted); *see also Staacke*, 841 F.2d at 281–82.

The Fourth Circuit's *Hanauer* decision demonstrates the extremely limited nature of the clear statutory mandate exception when applied to the FECA. In *Hanauer*, the plaintiff claimed that a regulation of the Secretary providing that lump-sum payments of disability compensation would no longer be made violated clear statutory mandates in §§ 8135(a) and 8124(a) of the FECA, which, when read together, he argued, required individualized adjudications of requests for lump-sum payments of benefits. The Secretary, on the other hand, argued that nothing in either section prevented him from exercising his discretion by promulgating a regulation providing for an across-the-board denial of all requests for lump-sum payment of wage-loss benefits. The Fourth Circuit found the Secretary's argument to be plausible, and therefore concluded that the regulation did not violate a clear statutory mandate. *See Hanauer*, 82 F.3d at 1311.

The complaint asserts that § 8123(a)[3] required the Secretary to refer Avedis to a referee physician because Dr. Adams' opinion that he was no longer disabled from his work injuries conflicted with the opinion of his attending physician, Dr. Harrison. Courts have held that similar claims do not present any violation of a clear statutory mandate. For example, the United States District Court for the Eastern District of Pennsylvania dismissed for lack of subject matter jurisdiction a FECA beneficiary's claim that her

---

**3.** Section 8123(a) provided:

"An employee shall submit to examination by a medical officer of the United States ... after the injury and as frequently ... as may reasonably be required. The employee may have a physician designated and paid by him present to

participate in the examination. If there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall make an examination."

benefits could not be terminated without a referee medical examination because she had submitted medical documentation supporting her claim. The court held:

FECA PM 2–810 instructs claims examiners in how to determine whether a "disagreement" between physicians exists, and that defendant's interpretation of 5 U.S.C. § 8123(a), using FECA PM 2–180, is plausible. Under that interpretation, it was appropriate for ECAB to decide plaintiff's claim based on the weight of the medical evidence. ECAB did not violate a clear statutory mandate in evaluating plaintiff's claim.

*McDougal–Saddler v. Herman,* 1997 WL 835414, *4 (E.D.Pa. Dec.24, 1997); *see also Summey v. United States Dep't of Labor,* 1989 WL 23015 at *2 (D.D.C. Feb. 28, 1989) (dismissing claim that employee's submission of medical evidence supporting claim mandated additional medical examination pursuant to FECA section 8123(a)).

As the court in *McDougal–Saddler* and *Summey* found, the Secretary has interpreted § 8123(a) to require the referral of a claimant for an impartial medical evaluation only if a determination is made by the claims examiner assigned to the case that there is a disagreement in medical opinion which must be resolved in order to adjudicate the claim; *see also McDougal–Saddler,* 1997 WL 835414 at *3, *Summey,* 1989 WL 23015 at *2. OWCP procedures implementing § 8123(a) provide that a claims examiner's determination of whether there is a disagreement in medical opinion is made by weighing the medical evidence of record and assigning greater or lesser value to medical reports depending upon a number factors, including whether the opinion is well-rationalized, *i.e.,* supported by medical explanation; comprehensive (reflecting all the testing and analysis necessary to support conclusions); non-equivocal as opposed to equivocal or speculative; and based on a complete and accurate factual and medical background, as set forth in FECA Procedure Manual, Part Two, chapter 2–0810–3, *Weighing Medical Evidence.* A well-reasoned opinion must be consistent with the findings upon examination. Additionally,

qualifications of a specialist may have a bearing on the probative value of an opinion.

The procedures further provide that no individual factor standing alone necessarily determines the weight of the medical evidence and that careful analysis of medical evidence should allow for resolution of most issues without resorting to a referee. FECA Procedure Manual, Part Two, Chapter 2–810–11, *Practical Consideration in Weighing Medical Evidence.*

Here, ECAB determined that Dr. Adams' report constituted the weight of the medical evidence because it was the most reliable and probative evidence on the question of whether Avedis "continued to have any disability for his position as an economist that is causally related to his federal employment." ECAB June 20, 1997 Decision and Order. Moreover, ECAB found that the medical reports of Drs. Harrison and Altshuler were of insufficient probative value to equal or outweigh the opinion of Dr. Adams. Dr. Adams provided a thorough report of his findings upon an extensive examination, noted the lack of objective findings from diagnostic studies, and provided convincing rationale for his conclusion. In contrast, ECAB found that the reports of Drs. Harrison and Altshuler failed to address the same issue of whether or not Avedis was disabled from performing his job as an economist, and that therefore these reports were of diminished probative value. Dr. Harrison's report merely stated that plaintiff was disabled from performing "manual labor."

The Secretary's established procedures for evaluating the weight of medical evidence before determining whether reference for an additional medical examination represent at a minimum a plausible interpretation of the meaning of the term a "disagreement" as employed in § 8123(a).

To conclude that there is a "clear statutory mandate" for the Secretary to refer any federal employee to an additional medical examination whenever an employee presents any medical opinion in some way disputing some or all of the initial medical report obtained by the Government, regardless of the comparative weight of each opinion, is inconsistent with the FECA's broader statutory scheme

of affording an efficient administrative scheme for the payment of compensation without courts' involvement.

Were Avedis' reading of FECA adopted, OWCP would be required to send a claimant for a referee examination based upon any "conflict" between a Board-certified specialist providing a well-rationalized opinion and a non-specialist who may have merely checked a box on a form indicating the presence of causal relationship or disability without providing any explanation.

The Secretary's procedures and the ECAB constitute a plausible interpretation of § 8123(a) which facilitates the continued administration of the FECA program in a fair and efficient manner and do not constitute a violation of a clear statutory mandate. The Secretary's procedures for weighing medical evidence embodies a policy choice associated with disability decisions which has entirely within her discretion to make. 5 U.S.C. §§ 8145, 8149; *see Rodrigues,* 769 F.2d at 1347–48. Accordingly, here, as in *Hanauer,* there has been no violation of a clear statutory mandate and the Secretary is entitled to summary judgment dismissing the complaint for failing to state a cause of action.

Leave is granted to the parties to move or set aside within twenty (20) days the grant of summary judgment upon the submission of any additional materials.

It is so ordered.